Jordan Jay KING and Dorothy King (for themselves and derivatively on behalf of Supervised Investors Summit Fund, Inc.), et al., Plaintiffs,

v.

KANSAS CITY SOUTHERN INDUSTRIES, INC., et al., Defendants.

No. 71 C 2141.

United States District Court, N. D. Illinois, E. D.

June 22, 1972.

Lowell E. Sachnoff, Sachnoff, Schrager, Jones & Weaver, Chicago, Ill., for plaintiffs.

Edward H. Hatton, Joan M. Hall, Jenner & Block, Chicago, Ill., for Kansas City Southern Industries.

George B. Christensen, Edward J. Wendrow, Winston, Strawn, Smith & Patterson, Chicago, Ill., for Kemperco and Lumbermen's Mutual.

A. Bradley Eben, Chicago, Ill., for Hawkinson, Porter, Matthias, SIS, Davis, Smith.

Arthur T. Susman, Orlikoff, Prins, Flamm & Susman, Chicago, Ill., for The "Funds."

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiffs have brought this action alternatively 1) as a derivative action on behalf of the Supervised Investors Summit Fund, Inc. ("Summit") and Technology Fund, Inc. ("Technology") or 2) as a class action purporting to represent all former shareholders of Summit, Technology, Balanced Income Fund, Inc. ("Balanced"), and Supervised Investors Growth Fund, Inc. ("Growth") who were allegedly wronged by the transactions involved herein. The four Funds will be collectively referred to as "the Funds".

The complaint alleges that Kansas City Southern Industries, Inc. ("KCSI") and the named individuals—John Hawkinson, Russell H. Matthias, Courtenay C. Davis, John L. Porter, Jr., J. Milburn Smith and Chester D. Tripp ("the individual defendants"), who were the principal shareholders and officers of Supervised Investor Services, Inc. ("SIS")— for their personal gain sold SIS, which was the investment adviser to the Funds, to Kemperco, Inc. ("Kemperco"), 65 per cent of whose common stock is owned by Lumbermen's Mutual Casualty Company ("Lumbermen's"), and thereby breached a fiduciary duty which they owed to the Funds and their shareholders. It is additionally alleged that the defendants caused misleading proxy statements to be sent to the shareholders of the Funds to secure their approval of the merger of SIS into Kemperco. Plaintiffs have moved to have this action designated as a class action pursuant to Rule 23, Fed.R.Civ.P.

The instant case is one of six cases currently pending before this Court involving the same transactions and the same defendants. In addition to the instant case, four suits have been brought as derivative actions on behalf of the Funds—Rifken, et al. v. KCSI, et al., 71 C 2116; Simonson v. Hawkinson, et al., 72 C 12; Schwartz v. Hawkinson, et al., 72 C 13; Herman v. SIS, et al., 72 C 14—and a direct action has been brought by the Funds themselves, Technology, et al. v. KCSI, et al., 71 C 2349. These cases heretofore have been treated as related cases, discovery in them consolidated, and this Court has had the benefit of advice of counsel for all concerned parties. Inasmuch as there are multiple plaintiffs in these cases, perhaps more importantly, multiple sets of attorneys, the resolution of plaintiffs' motion to designate the instant case as a class action has ramifications in all the related cases.

The defendants have opposed the motion for designation as a class action, as have the Funds, plaintiffs in 71 C 2349. In addition, the Funds have moved in that case to dismiss all pending actions other than the direct action being prose-

cuted by the Funds, or, in the alternative, to stay the other actions pending resolution of the direct action. Necessarily, the resolution of both these motions is closely intertwined and a ruling on the class action motion will determine whether a ruling on the Funds' motion in 71 C 2349 is required.

All these motions focus on a very basic idea—how to proceed with a cause of action against these defendants in a manner which will provide efficient utilization of the time and effort of parties, witnesses, lawyers and the Court, with no sacrifice in the resultant quality of justice. In essence, we are trying to do the most perfect justice given the available alternatives of a class action by Fund shareholders at the time of the alleged wrongdoing, a direct action by the Funds, a direct action by the Funds with intervening shareholder plaintiffs, a direct action by the Funds together with separate derivative actions, and separate derivative actions. Realistically speaking, it only makes sense to have one action since the underlying facts in each case are the same so that the real alternatives are 1) a class action, 2) a direct action, or 3) a direct action with intervening shareholder plaintiffs.

Before proceeding to a determination of the best method to proceed with these cases, it is important to set out the underlying theory of the cause of action. All these related cases rely on the recent decision of Judge Friendly in Rosenfeld v. Black, 445 F.2d 1337 (2d Cir. 1971). In that case, it was held that the office of investment adviser to a mutual fund may not be sold for personal gain. In order to prevent such a sale of the fiduciary position of investment adviser, the Second Circuit fashioned a prophylactic rule which makes the fiduciary accountable to its beneficiaries for any profits or gain realized in the sale of the fiduciary office. While there is some conflict between the different sets of plaintiffs and the defendants as to the viability and scope of the *Rosenfeld* teaching,

the theory of that case is the appropriate frame of reference for determining the proper method and parties to proceed in these cases.

## I

■ Traditionally, the vehicle for the redress of wrongs committed against a corporation and its shareholders has been a derivative suit brought by a shareholder of the corporation in which a prerequisite to the bringing of such an action is a demand upon the directors of the corporation to pursue the action on behalf of the corporation and a refusal or failure of the directors to act. The rationale for this is obvious since standing to bring the action is derived from the plaintiff's position as a shareholder of the corporation. Any recovery that is obtained in such an action goes to the corporation.

■ Alternatively, courts have allowed class actions to be brought by shareholders when the wrong complained of has been perpetrated against the shareholders directly. In such a class action, a demand upon the directors or other shareholders is not necessary, and any recovery goes directly to the class members themselves and not to the corporate treasury.

The general rule that a derivative action is the proper remedy when the wrong complained of is against the corporation and that a class action is the proper remedy when the wrong complained of is directly against the shareholders assists us very little in the instant case. Plaintiffs contend that the actionable wrong in the instant case— the sale for personal gain of the Funds' investment adviser—is a wrong directly committed against the shareholders of the Funds since they are the true beneficiaries of the adviser's trust and fiduciary duty. The defendants and the Funds, as well as the plaintiffs in the derivative suits, on the other hand, contend that the fiduciary duty, if any, was owed to the Funds as corporate entities

and that, consequently, the proper procedure is by way of a direct action or a derivative action.

The nature of these related cases and the underlying cause of action makes the determination of to whom the duty, if any, was owed both very complicated and, at the same time, inconclusive. The prophylactic rule of *Rosenfeld* is intended to prevent abuse of their position by the directors and shareholders of the investment adviser. In the instant case, neither the Funds nor the shareholders of the Funds, so far as it now appears, suffered any out-of-pocket loss due to the merger of SIS into Kemperco. The extent to which the defendants have realized gain in the transaction, not any loss to the Funds, will be the measure of the recovery in the instant case if the *Rosenfeld* holding is determined to be applicable and is followed. Any such recovery will largely be a windfall to whomever receives it—the Funds or the proposed class of shareholders.

The nature of a mutual fund is such that any amount paid to the Fund as a corporate entity increases the net asset value of the Fund and such an increase is automatically reflected in the market price of a share of the Fund since the price of a share is computed as the net asset value per share. If these related cases are pursued either as a direct action by the Funds or as a derivative action, any recovery obtained will go to the Funds but since the Funds are merely conduits, the recovery will go to the shareholders of the Funds at the time of the payment of the recovery.

The resolution of the issue of whether to allow a class action in a case based on *Rosenfeld* is a question of first impression. It should be noted that *Rosenfeld* itself was brought as a derivative action by shareholders of the involved Fund. After the Second Circuit rendered its opinion and the case was remanded to the District Court, Judge Gurfein spoke tangentially of the issue now before this Court in an opinion approving settlement of the case. An objection to the settlement made by the shareholders of the involved Fund who had sold their shares after the sale of the investment adviser and prior to the settlement was described by Judge Gurfein as "troublesome." However, because the proposed settlement involved only the derivative suit which had been brought, the opinion does not discuss the relative merits of a class action. The analysis in *Rosenfeld* went no further than this and is, therefore, of little assistance in resolving the basic issue before us.

Inasmuch as there apparently has been no out-of-pocket loss to any possible group of plaintiffs and since any recovery granted will largely be a windfall no matter which form of action is selected, our initial concern should be how to best further the underlying purpose of *Rosenfeld*. The basic purpose behind the *Rosenfeld* holding is to prevent the shareholders and directors of an investment adviser from utilizing their position to extract profits from a buyer which may be conditional on favorable treatment to the successor and to the future detriment of the Funds. A decision with respect to the proper mode for proceeding with an after-the-fact lawsuit will not affect in any way the actions of the involved directors and shareholders of the adviser nor will it affect the actions of the directors and shareholders of other advisers. The very existence of the prophylactic rule and its effect of taking away any gain in the sale of the adviser acts as a deterrent against future wrongdoing. However, to be an effective deterrent, the rule must be enforced. Will the granting of relief to one group of plaintiffs as opposed to any other facilitate a more effective enforcement of *Rosenfeld* or a generally more watchful eye on the affairs of mutual funds and their investment advisers? It seems unlikely.

The enforcement of most rules of corporate law, other than those enforced by a government agency such as the SEC,

is left to private citizens and their attorneys. The corporate plaintiff bar is well known for its capacity to police the activities of the corporate world by searching out violations in the hope of realizing fees, and thereby assuring adherence to the law. In the instant case, as most assuredly will be true in similar suits, each set of prospective plaintiffs is represented by competent counsel who will perform their function as private attorneys general in order both to obtain substantial attorneys' fees and to obtain a recovery for their clients.

Since neither type of action is superior to the other with respect to furthering the underlying purpose and public policy behind *Rosenfeld* and increasing the frequency with which its prophylactic rule will be enforced, the next level of inquiry should be a determination whether there is some advantage or disadvantage to granting recovery to one set of plaintiffs as opposed to any other. Plaintiffs' position is that it is more just and makes more sense to grant the recovery in this case, if one is granted, to those who were shareholders at the time of the alleged wrongdoing as opposed to those who will be the shareholders at the time of the recovery. Defendants counter that the procedural difficulties of a class action, including the proper definition of the class, notice, and related procedures in connection with settlement, are so substantial that they offset any possible advantage to awarding any recovery to those who were shareholders at the time of the alleged wrongdoing.

We assume, without deciding, that plaintiffs are correct in contending they are a "true class" and their action is maintainable under Rule 23(b) (1) so that no notice under Rule 23(c) (2) regarding opting out is necessary. Nevertheless, the procedural difficulties in maintaining the instant suit as a class action outweigh any benefits. Even assuming that the class involved is a "true class" under Rule 23(b) (1), as plaintiffs allege, such a determination would not dispose of all attendant notice problems. First, there are situations when notice similar to that envisioned by Rule 23(c) (2) is required for classes other than those under Rule 23(b) (3). See, e. g., Eisen v. Carlisle & Jacqueline, 391 F.2d 555 (2d Cir. 1968). In addition notice to all members of the class pursuant to Rule 23(e) is required before the case can be settled. The number of shareholders which would comprise the proposed class and the difficulty in assuring that all members of the class would be bound to such a settlement and could not institute an independent and subsequent action might preclude an otherwise possible settlement.

Another very difficult problem in the instant case, if it were maintained as a class action, would be the definition and determination of the appropriate class. Plaintiffs have suggested that the appropriate class would be the shareholders of the Funds at the record date for determining shareholders entitled to vote at the shareholders' meetings at which the merger of SIS into Kemperco was approved. However, such a record date is not the date of the alleged wrongdoing by the defendants. The prophylactic rule of *Rosenfeld* attempts to prevent gain from the *sale* of the office of investment adviser to mutual funds and in the instant case such a breach of fiduciary duty, if any, did not occur at the record date for the shareholders' meeting. Rather, if it occurred at all, it occurred at the time of the actual merger of SIS into Kemperco. One of the reasons for choosing a date such as a record date for the determination of the class is the comparative ease with which the members could be determined. The actual physical determination of the shareholders of the Funds at the time of the merger of SIS into Kemperco would be much more difficult than determining to whom proxy materials had actually been mailed. As experience has demonstrated, however, even a record date

presents problems of precise determination.

Assuming, for purposes of ruling, that a cause of action is established, it is by no means clear that the shareholders of the Funds at the time of the notice or of the merger would, in equity, be more entitled to share in any recovery than present or even future shareholders. An important consideration in foreclosing the sale of an adviser is that a purchaser who has paid a substantial price for acquiring control over a Fund's portfolio may exercise its new power to the detriment of the Fund shareholders and to the advantage of other interests which the purchaser may have. At the present stage of the instant proceedings, we can only speculate what objectives Kemperco hoped to achieve by its acquisition of SIS and whether all of those objectives are completely compatible with the best interests of the Funds' shareholders. It may well appear, when all the evidence is in, that current shareholders are in equity more deserving of participating in any recovery than the class which plaintiffs seek to represent.

The two groups are, of course, not mutually exclusive. A substantial number of the shareholders of the Funds at the time the proxy statement was sent out remain as shareholders. If they continue to hold their shares, they will receive the benefit of any recovery.

In light of all the foregoing considerations, we conclude that it would be inappropriate to declare a class action and plaintiffs' motion that we do so will be denied.

## II

Because the motion for class action in 71 C 2141 has been denied, we are left with five derivative suits and the direct action by the Funds. The Funds have moved to dismiss in 71 C 2349, or, in the alternative, to stay the proceedings in all the pending derivative suits. In support of their motion, the Funds state that the plaintiffs in all these cases have failed to make demand upon the directors to pursue the action on behalf of the Funds thereby making these derivative suits improper. They also contend that, even if the bringing of the derivative suits is proper, it is judicially inefficient to proceed with multiple suits involving the same transaction and the same fact pattern. The motion of the Funds was answered only by the plaintiffs in the *King* case, 71 C 2141, who contend that the dismissal of the derivative suits would be improper because a number of the directors of the Funds who have the potential for controlling the course of the direct action are also defendants in these actions. Because of this possible conflict of interest, they further contend that a demand upon the directors was not necessary prior to the bringing of derivative suits and that the interests of the shareholders are not adequately represented and safeguarded by the Funds in the direct action.

Largely for the reasons stated by the King plaintiffs with respect to a possible conflict of interest which a few of the Funds' directors may have, we have previously allowed a fund shareholder to intervene in the direct action brought by the Funds. Allowing such plaintiff-intervenors represented by independent and competent counsel in the direct action should alleviate any possible problems of conflict of interest and collusion among the litigants. In addition, the problem of collusion is minimized by the supervisory power over settlements which the Court may exercise.

Inasmuch as all these pending cases involve the same transactions, the same parties, the same facts and the same legal issues, and, since whatever problems the direct action may pose with respect to conflict of interest have been alleviated by allowing shareholder plaintiffs to intervene, the Funds' motion to stay the proceedings in all pending derivative actions will be granted. It is eminently more sensible to have but one action in

these related cases; the direct action is the proper vehicle in which to proceed.

## CONCLUSION

Accordingly, an order will enter in 71 C 2141 denying plaintiffs' motion to have that action designated a class action. In addition, an order will enter in 71 C 2349 granting plaintiffs' motion to stay the proceedings of all pending derivative suits involving the same transaction. Finally, orders will enter in the pending derivative actions—71 C 2116, 71 C 2141, 72 C 12, 72 C 13 and 72 C 14—staying those proceedings until further order of Court. If it should appear at any time that the interests of the shareholders are not being adequately represented in the direct action, appropriate steps can be taken. Until such time, we believe that efficient judicial administration warrants the foregoing procedure.