Martin **MARCUS** et al.

v.

George **PUTNAM** et al.

Civ. A. No. 67–41–F.

United States District Court, D. Massachusetts.

July 25, 1973.

---

Robert J. Sherer, Roche & Leen, Boston, Mass., Abraham Pomerantz, New York City, for plaintiffs.

Alfred Gardner, G. Lamar Crittenden, Jr., Herbert P. Wilkins, Palmer, Dodge, Gardner & Bradford, Marshall Simonds, Goodwin, Procter & Hoar, James C. Heigham, Choate, Hall & Stewart, Boston, Mass., Debevoise, Plimpton, Lyons & Gates, New York City, for defendants R. H. Gardiner, V. Bush, L. J. Hunter, D. J. Hurley, H. W. Johnson and Stanley F. Teele.

## OPINION

FREEDMAN, District Judge.

The Court is asked to approve a settlement of this consolidated stockholders' derivative action brought on behalf of all of the several Putnam Funds (hereafter referred to as the Funds) which are open-end mutual funds. All of the Funds are investment companies registered pursuant to The Investment Com-

pany Act of 1940, 15 U.S.C. §§ 80a—1 to 80a—52. The trustees of the Hiida Winslow Patrick Trust, who own shares of one of the several Putnam Funds, oppose the settlement and seek to intervene by means of a class action.

The complaint in the amended consolidated action alleges numerous violations of law. Among the main contentions are the following:

1. The merger of Putnam Management Company of Massachusetts (hereafter referred to as Old Management Company) and Putnam Management Company of Delaware (hereafter referred to as New Management Company) in 1970 constituted an illegal sale of the investment advisory office which breached Old Management's fiduciary duty to the Funds.

2. The Funds are alleged to have engaged in brokerage practices known as give-ups in which brokerage commissions resulting from the Funds' own portfolio transactions are awarded to those brokers who sell shares or who furnish services to the management company. Old Management Company allegedly did not inform the directors of the Funds about the possibility of recapturing portions of the brokerage commissions.

3. Churning allegedly occurred in that the turnover of the Funds' portfolio securities was excessive, resulting in excessive brokerage commissions.

4. The advisory fees charged by the investment advisor were excessive.

5. Proxy materials relating to the merger and other practices were false and misleading.

Voluminous briefs and depositions are on file with the Court, and oral argument was heard on May 3, 1973.

### I

The objectors have moved to intervene individually and as shareholder class representatives pursuant to Rule 24(b) and Rule 23. At the outset, the objec-tors have not filed a pleading to accompany their motion. The Court notes that the objectors did not seek to intervene until April 13, 1973, just one day prior to the two month cut-off point for the making of objections to the settlement. The objectors contend that they would represent the class of persons who have redeemed shares in the Funds since 1970 and whose ownership is diluted through this redemption. The significance of this, they contend, is that these shareholders and former shareholders will not partake of the recovery on the proposed settlement commensurate with the loss sustained by them. The proposed settlement will be a windfall for all of the new shareholders who suffered no harm by the previous wrongdoings.

■■■ The Court finds that it must deny the motion to intervene, for such intervention, if allowed, would indeed prejudice the rights of all of the other shareholders of the Funds and the Funds themselves. No further delay in the instant action should be tolerated. Only after lengthy negotiations and pre-trial discovery procedures did the proposed settlement come into being. The objectors knew of the pending litigation and certainly could have sought intervention at an earlier time. The present motion appears to the Court to be merely a dilatory tactic.

■■■ The Court also denies the designation of a class action in the case at bar. The objectors argue that a mutual fund is a unique entity that can not be equated with a business corporation; and as a result, the shareholder of a mutual fund has a right to sue as an individual. The Court rejects this argument. The shareholder of a mutual fund does not attain a primary right to sue because the value of his share reflects the net asset value of the fund. Kauffman v. Dreyfus Fund Inc., 434 F. 2d 727 (3rd Cir. 1970). Rather, it is the nature of the right sought to be enforced that determines the proper way to bring suit. See 3b Moore's Federal Practice ¶ 23.1.16 at 23.1–103 (1973).

If the right belongs to the corporation, a suit seeking to enforce that right must be brought derivatively. On the other hand, a shareholder can bring an individual or a class action to enforce a personal right.

 The rights sought to be enforced in the instant case clearly belong to the corporation and are enforceable derivatively. The sale of the advisory contract claim arises out of the contract and duty existing between the Funds and the adviser. Rosenfeld v. Black, 336 F.Supp. 84, (S.D.N.Y.1972). The right to sue for a breach of that duty is clearly with the Funds. The harm which a stockholder suffers from proxy violations ordinarily results from the harm done to the corporation. J. I. Case Co. et al. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Although the Court recognizes that proxy claims can in certain circumstances be personal, the violations alleged here give the Court no reason to believe that they are rights which are personal to these particular shareholders. Similarly, churning, recapture of give-ups, and excessive advisory fees are all claims which belong to the Funds and to all shareholders in general.

Other considerations involved in the denial of the class action include the procedural difficulties in defining the class and giving notice to all members, plus the difficulties in effecting a distribution of recovery to all members. Notice problems and the difficulties in ascertaining who comprised the class were sufficient reasons for the court to deny a class action in King v. Kansas City Southern Industries Inc., 56 F.R.D. 96 (N.D.Ill.1972). In Eisen v. Carlisle and Jacquelin, 479 F.2d 1005 (2nd Cir. 1973), the court denied the class action since giving notice to individual members of the class was an impossibility.

The objectors do not convince the Court that they are any more entitled to share in any potential recovery than are present or future shareholders. An im-

portant factor in Rosenfeld v. Black, 445 F.2d 1337 (2nd Cir., 1971), was the concern that the purchaser of the advisory office who pays a substantial price for that office might not exercise the office with the best interests of the shareholders in mind. As a result, it may appear that the present and future shareholders are the ones who suffer by such a sale and are in an equitable sense entitled to recovery over the objectors and their class. See King v. Kansas City Southern Industries Inc., supra, 56 F.R.D. at 100.

Therefore the Court denies the objectors' motion to intervene either individually or as shareholder class representatives.

## II

The Court finds no valid reason to postpone action on the proposed settlement. Objectors' motion to defer determination on the proposed settlement is consequently denied.

 The proposed settlement includes two provisions. First, certain of defendants who are former shareholders are to place $1,000,000 of Marlennan stock in escrow, which will be turned over to the Funds upon Court approval of the settlement. Second, the Funds are to receive a credit of $229,000 a year against the advisory fees payable to New Management Company over a ten year period, or in the alternative, the Funds are to receive this same amount in cash in lieu of the credit. The Funds will receive an aggregate sum of $3,290,000. The settlement, if approved, will dismiss all claims alleged or which could have been alleged in this action. The defendants will also be released from any further liability in connection with the claims.

Judge Gurfein, in Rosenfeld v. Black, 336 F.Supp. 84 (S.D.N.Y., 1972), has outlined the general standards for the Court to follow in determining the reasonableness of a settlement under Rule 23.1. "Approval should be given if the

settlement offered is fair, reasonable, and adequate . . . The most important factor is the strength of the case for plaintiff on the merits, balanced against the amount offered in settlement. This factor is sometimes referred to as the likelihood of success," quoting Judge Wyatt in West Virginia v. Chas. Pfizer & Co., 314 F.Supp. 710, 740 (S. D.N.Y.1970). A compromise will be approved as fair, reasonable and adequate if it serves the interest of the corporation. Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y., 1971).

With these legal principles in mind, the Court proceeds to evaluate the settlement.

On July 7, 1970, Old Management entered into an agreement with defendant Marlennan Corporation whereby Old Management would merge into New Management, which would be a wholly owned subsidiary of Marlennan. Under the terms of the agreement, Marlennan was to issue stock valued at $33,000,000 to the Old Management shareholders. New Management would then act as the investment adviser to the Funds as a result of the merger. The shareholders approved the new agreement, and the merger went into effect in October 1970. Old Management was worth approximately $5,000,000 at the time of the merger.

The only objectors to the present proposed settlement before this Court are the trustees of the Hilda Winslow Patrick Trust who own approximately 3,937 shares of the George Putnam Fund of Boston. These objectors complain that the defendants are liable for the $28,000,000 profit realized by Old Management for the sale of its advisory position, as in Rosenfeld v. Black, 445 F.2d 1337 (2nd Cir., 1971).[1] They further contend that the settlement amount of $3,290,000 is unreasonably low in comparison with the $28,000,000 profit

realized and hence with the amount that plaintiffs could recover if the case were tried.

In Rosenfeld v. Black, *supra,* the Second Circuit held that an investment advisor to a mutual fund breached its fiduciary duty to the fund by realizing a profit in connection with the sale of its advisory office to a new advisor. It is certainly not clear that *Rosenfeld* is controlling in this Circuit, inasmuch as the Court of Appeals has never considered a *Rosenfeld* claim. Other circuits have not followed *Rosenfeld.* See: Kukman v. Baum, 346 F.Supp. 55 (N.D.Ill., 1972); Equity Fund Inc. v. VWR Corp., CCH Federal Securities Law Reporter ¶ 93,698 (W.D.Wash., Oct. 11, 1972). Therefore, the Court can not be certain that, as a matter of law, the plaintiffs would be able to recover on a *Rosenfeld* claim. However, for purposes of determining the reasonableness of the settlement, the Court here will assume that *Rosenfeld* controls. As such, it would appear that the *Rosenfeld* claim is the strongest of all those asserted by the plaintiffs.

In trying to predict the amount of recovery on this claim, the Court finds that there are several factors which would substantially reduce it from the $28,000,000 which the objectors assert is the proper measure of recovery. First, the Marlennan stock received by Old Management was not worth $33,000,000 because of restrictions on its sale. The court in White v. Auerbach, CCH Federal Securities Law Reporter ¶ 93,617 (S.D.N.Y., Sept. 19, 1972), recognized a 20% reduction in the market value of restricted stock. Similarly the court in Rosenfeld v. Black, 336 F.Supp. 84 (S. D.N.Y., 1972), in approving the settlement, gave recognition to the lessened value of stock caused by restrictions. Applying a 20% discount to the $33,000,000 of Marlennan stock reduces the value of that stock to $26,400,000.

1. The difference between the $33,000,000 value of the stock issued and the $5,000,- 000 net worth of Old Management is allegedly the $28,000,000 profit received.

Second, Old Management received only approximately 50% of its total income from business with the Funds. A reduction of the selling price must be made as a result. See White v. Auerbach, *supra*, at 92,829. Third, Old Management served as both investment adviser and principal underwriter for the Funds. The fiduciary principle established in *Rosenfeld* with respect to an investment adviser does not necessarily apply to an underwriter. Newman v. Stein, 464 F.2d 689 (2nd Cir., 1972). Recovery may be significantly limited in this situation. Fourth, defendants contend that the same adviser continued, and therefore the amount of unjust enrichment is less. See: Rosenfeld v. Black, 445 F.2d 1337, at 1346, n. 12 (2nd Cir., 1971); Newman v. Stein, *supra*, 464 F.2d at 697. Such an argument is worthy of legal consideration.

Without calculating with mathematical certainty what the amount of recovery would be on the *Rosenfeld* claim, it appears totally unrealistic to value the claim at $28,000,000. Considering the uncertainty of the law and the aforementioned mitigating factors, this Court finds that the over $3,000,000 settlement is reasonable with respect to this claim.

Turning to the charge of give-ups,[2] the First Circuit has held that the investment adviser and underwriter have a duty to disclose to the directors of the fund the possibility of recapturing portions of these brokerage commissions for the direct benefit of the fund. Moses v. Burgin, 445 F.2d 369 (1st Cir., 1971). In the instant case, it appears from the depositions that the directors were informed about the recapture possibilities but rejected them. Consequently, the likelihood of success on this claim is minimal at best.

As to the excessive advisory fee claim, there has never been a recovery on a claim of this sort. See: Acampora v. Birkland, 220 F.Supp. 527 (D.Colo. 1963); Saxe v. Brady, 40 Del.Ch. 474, 184 A.2d 602 (1962); Meiselman v. Eberstadt, 39 Del.Ch. 563, 170 A.2d 720 (1961). The prospect of recovering on such a claim in the case at bar is very dim.

Turning to the churning claim,[3] the complaint alleges that the portfolios were turned over excessively to generate brokerage fees. The prospectus indicates that the portfolio turnover of the George Putnam Fund was less than once a year. There is nothing to indicate that such a turnover rate is excessive or unusual. White v. Auerbach, *supra*, at 92,828. Therefore, the chances of recovering on this claim are similarly poor.

Plaintiffs also allege that the proxy statements were false and misleading. The merit of this claim comes down to an evidentiary question. After reading one of the proxy statements which explains the merger agreement, the Court believes that the plaintiffs would have a difficult time in proving this claim.

In conclusion, considering all the uncertainties which surround the outcome of any litigation, and after evaluating the various claims in the instant case, the Court finds that the proposed settlement is fair, reasonable, and adequate. The Court further believes that to disap-

2. Give-ups are those portions of a stockbroker's commission resulting from the funds' own portfolio transactions which are paid over to brokers who have sold shares of the funds to the public. The give-ups are awarded to brokers in proportion to their success in selling and help to stimulate sales. Through the use of give-ups, the funds and the existing shareholders assume part of the cost of the sales process; and, as a result, the net income from selling new shares is less than asset value. Whereas, if the fund can obtain the give-ups for its own benefit, the fund will receive the full asset value from the sale of its shares. See Moses v. Burgin, *supra*, at 372, 374.

3. Churning is the needless sale and repurchase of the funds' securities which result in excessive brokerage fees to the funds.

prove this settlement would be unjust to the Funds and the overwhelming majority of the shareholders who support the settlement. Accordingly, the Court orders that the settlement be approved.