**Frank S. YAMAMOTO, Individually and, derivatively, on behalf of Investors Finance, Inc., Appellant,**

v.

**Kazuo OMIYA et al., Appellees.**

**No. 76–1069.**

United States Court of Appeals, Ninth Circuit.

Nov. 28, 1977.

---

Edward A. Jaffe (argued), Honolulu, Hawaii, for appellant.

Ton Seek Pai (argued), R. Patrick Jaress (argued), Jack C. Morse (argued), Honolulu, Hawaii, for appellees.

Before ELY, HUFSTEDLER and WRIGHT, Circuit Judges.

ELY, Circuit Judge:

This interlocutory appeal presents three questions [1] relating to orders entered by the District Court in a suit arising out of an allegedly deceptive proxy solicitation. We affirm the District Court's order striking the prayer for injunctive and other equitable relief, and also the court's order granting summary judgment in favor of Dr. Lee. We vacate the order denying class certification.

### I.

The controversy centers on the affairs of Investors Finance Inc. (Investors). Investors is a publicly held company with 1601 shareholders in 24 states and is required to register its stock with the Securities and Exchange Commission. All solicitations of Investors stockholders are subject to the proxy regulations under section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n (1971).

The directors [2] of Investors decided, in September of 1971, that they should consider selling the principal asset of the company, the Investors Finance Building. The asserted reason for this decision was to increase the rate of return of the company by freeing additional funds for industrial loans, claimed to be the company's primary business. At the September 16, 1971 meeting of the Board of Directors, the directors agreed that any amount from $1,650,000 to $1,800,000 would be an acceptable price for the building. [3]

At a following meeting, on November 8th, the Board directed its Business Development Committee to study and subsequently report to the Board whether the proposed sales price in the $1,650,000 to $1,800,000 range would be within the limits of market value, and if not, to recommend an appropriate price.

A special meeting of the Board was held on December 2d to discuss in part the selling price of the building. The Business Development Committee reported to the Board, and the Board agreed to a selling price of $1,600,000. The Board also agreed at the meeting to list the building for sale with a firm called Charles Kimura Realty (Kimura). Directors Omiya and Takehara were licensed as real estate dealers, and their principal broker was Kimura. Takehara and Omiya abstained from the vote on the listing with Kimura.

A listing for the building was made at the Real Estate Broker's meeting in Hono-

---

1. We do not reach Yamamoto's contention that partial summary judgment should have been granted in his favor. See 9 J. Moore, Federal Practice ¶ 110.25 (2d ed. 1975). The causation issue has not yet been addressed by the trial court. See n. 5, infra.

2. The defendants below were the members of the Board of Directors of Investors, Alexander Grant & Co., and Dr. Philip Lee.

3. The quoted figures are taken from the original minutes of the meeting. There is some dispute as to whether the actual figures agreed upon were those stated or rather, a price ranging from $1,300,000 to $1,800,000. At some point after the commencement of this litigation, the directors caused the minutes to be "corrected" in order to reflect the broader range.

lulu, from which three written offers were received by Omiya. One of these offers was made by Dr. Lee. Eventually Dr. Lee raised his initial offer of $1,300,000 to $1,400,000 (the best of the three offers). A special meeting of the Investors' Board was held on December 20th to consider Dr. Lee's offer. The Board voted to accept the offer conditioned, among other things, upon approval of the stockholders and of Hawaii's bank examiner.[4]

As a result of the vote taken on December 20th, Dr. Lee submitted a second offer of $1,400,000, this time subject to the terms and conditions previously fixed by the Investors Board. The directors determined that approval of the stockholders of Investors should be a prerequisite for the sale.[5]

Director Tashima, an attorney, prepared the proxy solicitation statement. Defendant Alexander Grant & Co. was retained to prepare the financial statements for inclusion in the proxy materials. The proposed proxy statement was eventually accepted by the Securities and Exchange Commission and then distributed to the shareholders.

Yamamoto is a stockholder of Investors who opposed the sale of the building to Dr. Lee at the agreed terms. Following the company's proxy solicitation effort and shareholders' votes, at which 79.4% of the shares were voted in favor of the sale, Yamamoto filed suit alleging that the proxy statement was misleading and deceptive in numerous respects, including the

failure of the statement to reveal that director Omiya was to receive a $21,000 commission on the sale.[6]

## II.

In order to simplify the issues in respect to our consideration of the District Court's denial of equitable relief, we first approach the question of the propriety of the summary judgment granted in favor of Dr. Lee. Plaintiff urged below that Dr. Lee was liable for the allegedly misleading nature of Investors' proxy materials under section 14(a) of the Securities Exchange Act which provides as follows:

(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit *or to permit the use of his name to solicit* any proxy or consent or authorization in respect of any security . . . (emphasis added).

The thrust of Yamamoto's argument is that Dr. Lee permitted the use of his name to solicit proxies in that his name and address appeared in the proxy statement as the proposed buyer of the building.[7] We are convinced that the reach of

4. There is no indication in the minutes of the December 20th meeting that Omiya abstained from voting on the proposed sale, even though he was to receive a $21,000 commission from the sale.

5. The major reason for the belief that stockholder approval was necessary is Hawaii Revised Statutes, Section 416–33, which requires 75% shareholder approval for the sale of substantially all of the property and assets of a domestic corporation.

　We assume for the purposes of this appeal that Investors was required to obtain shareholder approval. Dr. Lee's brief suggests that such approval was unnecessary, leading to the unspoken conclusion that the proxy violations could not have been the "cause" of any shareholder injury. *See Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381–84 (2d Cir. 1974), *cert. denied* 421 U.S. 976, 95 S.Ct. 1976,

44 L.Ed.2d 467 (1975); *Swanson v. American Consumers Industries, Inc.,* 475 F.2d 516, 520–21 (7th Cir. 1973). Since this issue has apparently not yet been brought to the attention of the trial court, we do not reach it on this interlocutory appeal. *Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1975).

6. Yamamoto's complaint also contained three other counts. They are unimportant in the consideration of this appeal.

7. The mention of Dr. Lee's name in the proxy materials is confined to the following paragraph in the narrative text:

　"(c) The purchaser is Dr. Philip J. W. Lee, whose address is 5931 Kalanianaole Highway, Honolulu, Hawaii. Dr. Lee is not a stockholder of the company nor related to any of the officers or directors of the company."

section 14(a) could not possibly extend so far. In order to hold a person liable for proxy violations, one must show, at the very least, a substantial connection between the use of the person's name and the solicitation effort. *Lewis v. Dansker,* 68 F.R.D. 184, 194 n. 2 (S.D.N.Y.1975). The mere presence of Lee's name in the materials (probably required by the SEC) did not reveal any significant control by Lee over the statement, or his adoption of it that was sufficient to justify attaching liability to him.[8] It is hardly conceivable that the mere revelation that Lee was the proposed purchaser could have been an inducing factor in the granting of a shareholder's proxy.

### III.

We next consider the trial court's order striking the appellant's prayers for injunctive and equitable relief. We assume for the purposes of this discussion that the facts are in accord with the plaintiff's allegations concerning the misleading nature of the material in the proxy statement. May a shareholder, either individually or as representative of the class, obtain a resolicitation of proxies and avoidance of the sales contract as a matter of right, merely by showing that the proxy materials are materially misleading? To put the question another way, is the sales contract voidable at the instance of a shareholder?

In the analysis of this question, we begin with *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1969), in which the Court wrote:

> Our conclusion that petitioners have established their case by showing that proxies necessary to approval of the merger were obtained by means of a materially misleading solicitation implies nothing about the form of relief to which they may be entitled. We held in [*J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423] *Borak* that upon finding a violation the courts were "to be alert to

provide such remedies as are necessary to make effective the congressional purpose," noting specifically that such remedies are not to be limited to prospective relief. 377 U.S., at 433, 434, 84 S.Ct. at 1560. In devising retrospective relief for violation of the proxy rules, the federal courts should consider the same factors that would govern the relief granted for any similar illegality or fraud. One important factor may be the fairness of the terms of the merger. Possible forms of relief will include setting aside the merger or granting other equitable relief, but, as the Court of Appeals below noted, nothing in the statutory policy "required the court to unscramble a corporate transaction merely because a violation occurred." 403 F.2d, at 436. In selecting a remedy the lower courts should exercise " 'the sound discretion which guides the determinations of courts of equity,' " keeping in mind the role of equity as "the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Hecht Co. v. Bowles,* 321 U.S. 321, 329–330, 64 S.Ct. 587, 591–592, 88 L.Ed. 754 (1944), quoting from *Meredith v. Winter Haven,* 320 U.S. 228, 235, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943).

The Court went on to hold that section 29(b) of the Exchange Act did not render proxy contracts made in violation of the Act "void" but suggested that voidability at the option of the innocent party might be appropriate. We also have the guidance of *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 64, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975), wherein the Supreme Court noted that relief is to be determined according to "traditional principles."

Yamamoto suggests that since the corporate transaction in question involved the sale of land, the District Court was required to rescind the sale to Dr. Lee and return the realty to the corporation. He argues that under traditional equitable

---

**8.** We need not consider whether the reach of section 14(a) can be extended beyond the directors and officers of the company under any circumstances, when the solicitor of the prox-

ies is the company itself. We need only hold that more must be shown than the mere appearance of a buyer's name in the proxy materials.

principles, damages could not compensate the shareholders for the loss of the land.[9] Despite the discussion of possible voidability in *Mills,* however, the Court could not have been clearer in its refusal to tie the hands of the trial court. To us, *Mills* indicates that the decision on remedy should be left to the discretion of the District Court, based on the best interests of the shareholders as a whole.[10] *See Swanson v. American Consumers Industries, Inc.,* 475 F.2d 516, 519 (7th Cir. 1973); *Klaus v. Hi-Shear Corp.,* 528 F.2d 225, 232 (9th Cir. 1975); *Crane Co. v. Westinghouse Air Brake Co.,* 419 F.2d 787, 804 (2d Cir. 1969), *cert. denied,* 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).

■ Although we have now decided that a trial court may properly foreclose equitable relief, there is an additional issue presented by this case as to whether a trial court may properly deny such relief in advance of trial. We think that under the very unique circumstances of this case, the trial court's action was proper. The Supreme Court has held that the questions of liability and relief are separate in private actions under the securities laws. *Rondeau v. Mosinee Paper Co., supra,* 422 U.S. at 64, 95 S.Ct. 2069. Professor Loss expresses the view that the "step of setting aside consummated action goes to discretion and balancing of the equities (with due regard for the rights of innocent third persons)." 2 L. Loss, Securities Regulation 967 (2d ed. 1961, Supp. 1969). *See also* Note, Private Actions and the Proxy Rules: The Basis and Breadth of the Federal Remedy, 31 U.Chi.L. Rev. 328, 354 (1964); The Supreme Court, 1969 Term, 84 Harv. L.Rev. 1, 214 (1970).

Here the trial court determined that it would not be appropriate to grant equitable relief, rescission of the sale to Dr. Lee, and it is apparent to us that a trial on the merits could not have justly altered his views. The record indicates that Dr. Lee had purchased the investors Finance Building for legitimate tax purposes and had integrated the building operations into his tax returns for several years. During the hearings in the trial court on this issue, the attorney for the defendant directors suggested that to unscramble the transaction would be "one fine job," and noted that should the sale of the building be rescinded, Dr. Lee might have a claim against the Company "in six figures." There is the consideration, too, that Lee, wholly innocent, confronted the prospect of needless expense in attorneys fees. The trial court correctly balanced the equitable factors, and its summary judgment in Lee's favor is affirmed. It follows that the District Court was correct in the entry of its Order striking the *lis pendens* notice.

■ We do not at all intend to suggest that in every case generally like this, the trial court may properly rule on the scope of remedy prior to trial on the merits. *See Boggess v. Hogan,* 328 F.Supp. 1048, 1054 (N.D.Ill.1971). This is, however, as we have indicated, an unusual case. A mass of pretrial discovery had occurred, resulting in a record of over 3,000 pages. Furthermore, the trial court heard extensive oral argument at which the attorneys fully set forth the facts underlying the case and their positions in respect to the issues. While ordinarily a trial court should, of course, await

9. *Danciger Oil & Refining Co. v. Burroughs,* 75 F.2d 855 (10th Cir.), *cert. denied,* 295 U.S. 758, 55 S.Ct. 915, 79 L.Ed. 1700 (1935); *City Stores Co. v. Ammerman,* 266 F.Supp. 766 (D.D.C. 1967), *aff'd,* 129 U.S.App.D.C. 325, 394 F.2d 950 (1968).

We attach no special significance to the fact that the disputed transaction involved the sale of real property. When a minority shareholder attempts to set aside a merger or sale of assets achieved by a misleading proxy statement, the ownership interest which has been lost is no more compensable in damages than is the loss of a parcel of land. Indeed, in the case of a sale of assets, loss of interest in real property

will often be one element of the disputed transaction. Despite the inadequacy of the legal remedy in these kinds of cases, retrospective relief is not necessarily granted at the instance of a disgruntled shareholder. *Mills v. Electric Auto-lite Co., supra; Swanson v. American Consumers Industries, Inc.,* 475 F.2d 516 (2d Cir. 1973).

10. Professor Loss suggests that the power of a court to "unscramble" a transaction, gives to the court, *a fortiori,* the power to prescribe lesser relief. 5 L. Loss, Securities Regulation 2926 (2d ed. 1961, Supp.1969).

the conclusion of trial before making a decision affecting the extent of possible remedies, delay in this controversy would have been futile and wasteful. On the record, as it was fully developed in pre-trial stages, it is inconceivable that any court, sitting in equity, could have, justly and fairly, ordered Dr. Lee to reconvey his building. Should there ultimately be recovery, damages would be, as the district judge properly held, a perfectly adequate remedy. Any damages recoverable upon the basis of the alleged defect in the solicitation statement would apparently be far less than the damages that Lee could likely recover from the corporation or its directors in the event that his good-faith purchase of the building should be set aside.

In analyzing the equitable considerations, we cannot overlook the possibility that the appellant may not have sought equitable relief with "clean hands." In a hearing conducted by the District Court on April 21, 1975, a hearing principally related to the issue of class treatment, Yamamoto's attorney frankly remarked, "I would not be surprised if the immediate certification of this case would result in a rather rapid . . settlement . . . ." Whether the attorney so intended or not, his remarks carry an inference of attempted coercion. And if Lee, the innocent purchaser, should have been required to remain a party to a lawsuit wherein the pre-trial proceedings demonstrated beyond doubt that if Yamamoto should ultimately prevail, his relief could only be the recovery of a relatively small sum of money from persons other than Lee, the prospect of Lee's exposure to continuing litigation expense would doubtless tempt him to succumb to coercion, in the economic sense, to make an unwarranted contribution to the "rapid" settlement that Yamamoto's attorney, by his own admission, hoped to obtain. Obviously, the District Court could not tolerate this, and neither can we.

## IV.

The District Court denied the maintenance of the appellant's suit as a class action on behalf of Investors' shareholders. In the interest of judicial economy, we have determined to reach that issue on this appeal, even though the order denying certification was without prejudice.[11]

The decision to grant or deny class action certification under Rule 23 is within the trial court's discretion and will be reversed on appeal only if an abuse of discretion is shown, *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330 (9th Cir. 1977); *Price v. Lucky Stores, Inc.*, 501 F.2d 1177 (9th Cir. 1974), or if the trial court has applied impermissible legal criteria or standards, *Carey v. Greyhound Bus Co.*, 500 F.2d 1372 (5th Cir. 1974). *See* 3B J. Moore, Federal Practice ¶ 23.50, at 1101 (2d ed. 1974).

The basis of the court's decision to deny certification here was that the injury involved was fundamentally an injury to the corporation which could be adequately redressed in a derivative suit. While it is true that *J. I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) suggests that the primary injury pursuant to a deceptive proxy flows from dam-

---

11. The appellees contend that we are without jurisdiction to consider the denial of class action certification because the appellant failed to take an interlocutory appeal from the trial court's order within the time allowed. An interlocutory appeal is permissive rather than mandatory, and an aggrieved party may, at his election, decline to take an interlocutory appeal, choosing to appeal after there has been a final determination of the case on all issues. *Caradelis v. Refineria Panama, S.A.,*, 384 F.2d 589 (5th Cir. 1967); 9 J. Moore, Federal Practice ¶ 110.25(2) (2d ed. 1975).

While, in an interlocutory appeal, an appellate court will normally concern itself only with the order from which the appeal is taken, the court has the power to consider all issues should it decide to do so. 9 J. Moore, Federal Practice 110.25 (2d ed. 1975). *Genosick v. Richmond Unified School District*, 479 F.2d 482 (9th Cir. 1973); *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091 (5th Cir. 1973); *Hurwitz v. Directors Guild of America, Inc.*, 364 F.2d 67, 69–70 (2d Cir.), *cert. denied*, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966). *But see Singleton v. Wulff*, 428 U.S. 106, 119–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1975) (no right to consider case on the merits when the parties have had no hearing on the merits in the trial court).

age done to the corporation, it is also true that *Borak* explicitly recognizes the right of a shareholder to bring both direct and derivative actions. *Id.* at 431, 84 S.Ct. 1555. *See also Mills v. Electric Auto-Lite Co., supra; Swanson v. American Consumers Industries, Inc., supra; Dann v. Studebaker-Packard Corp.*, 288 F.2d 201 (6th Cir. 1961).

In allowing only the derivative action to proceed, the trial court relied primarily on *King v. Kansas City Southern Industries*, 56 F.R.D. 96 (N.D.Ill.1974), *aff'd*, 519 F.2d 20 (7th Cir. 1975). *King*, however, does not stand for the broad proposition that a trial court may always choose to deny class certification if it believes that a derivative action will provide adequate relief. As the Seventh Circuit noted in affirming *King*, the trial court there had specifically found both (1) that the class action would not further the underlying policies of a so-called *Rosenfeld* claim,[12] and (2) that the procedural difficulties of a class action were serious under those factual circumstances. We find no such specific reasons for denying class certification presented on the record before us.

We therefore hold that in light of the teachings of *Borak* and *Mills*, a shareholder who alleges a deceptive or misleading proxy solicitation is entitled to bring both direct and derivative suits. The former action protects the shareholders' interest in "fair corporate sufferage". Accordingly the District Court's order denying class certification is vacated.[13] We have already noted that the court's order as to this issue was tentative, and we believe it altogether likely that the court would have eventually taken the view that we have expressed. The controversy, involving relatively simple issues and comparatively few shareholders, seems to be of the type that particularly calls for class action treatment.

The parties involved here, except Dr. Lee, shall bear the costs that each, respectively, has incurred in connection with this appeal. The District Court's orders are

Affirmed in part; vacated in part.

HUFSTEDLER, Circuit Judge, concurring and dissenting:

In order to grant summary judgment to Lee, the district court had to decide, as a matter of law, that (1) Lee was not liable for alleged misleading statements in the proxy materials, and (2) appellant and his fellow stockholders were not entitled to rescind the sale of the real property to Lee by reason of the misrepresentations in the proxy materials. I agree with my brothers that the district court correctly decided the first issue, but I cannot agree that the district court could eliminate equitable relief at this stage of the case. The majority opinion's holding on this point is contrary to the Federal Rules of Civil Procedure and to the explicit teaching of the Supreme Court in *Mills v. Electric Auto-Lite Co.* (1969), 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 and *J. I. Case Co. v. Borak* (1964), 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423.

If appellant stated a claim for equitable relief against the directors for violating Section 14(a) of the Securities Act of 1934, and if that claim was not destroyed by undisputed facts in the record which could be read into the complaint, Lee could not be dismissed from the case. The district court knew that Lee was an indispensable party in a suit to rescind the sale of the real property to him. (F.R.Civ.Proc., Rule 19(a).) Therefore, the district court removed the rescission thorn from Lee's side by striking equitable relief from the complaint and, to complete the task, it also struck the *lis pendens* notice.

---

**12.** In *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971), *cert. denied*, 409 U.S. 802, 93 S.Ct. 24, 34 L.Ed.2d 62 (1972), the Second Circuit held that an investment advisor to a mutual fund is personally liable to the fund for profiting from the appointment of a new advisor on his recommendation.

**13.** We vacate the order denying class certification, rather than directing that the class be certified, because the trial court has not yet had an opportunity to rule on other arguments as to why certification would be inappropriate here. *Singleton v. Wulff*, 428 U.S. 106, 119–21, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1975).

The district court's rulings cannot be sustained on the theory that appellant stated no equitable claim for relief. Equitable relief, including rescission, is unquestionably available to redress violations of Section 14(a). (*E. g., Mills v. Electric Auto-Lite Co., supra* 396 U.S. 375, 90 S.Ct. 616.) The complaint adequately averred a violation of Section 14(a), and nothing in the record before the district court defeated resort to equity.

The majority opinion recognizes that equitable relief is available to persons injured by Section 14(a) violations. The basis of its holding is that the district court has discretion to deny equitable relief before determination of the director's liability, and no abuse of discretion has been shown. That holding would be unassailable if the liability case against the directors had been decided, because at that stage of the litigation, the district court has very broad discretion in fashioning an appropriate remedy. (*Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 386, 90 S.Ct. 616.) But this case has not been tried, and the district court has not decided the directors' liability issue. There is not a scrap of authority to sustain the majority's view that the district court has discretion to strike equitable relief before liability has been decided.

The district court's rulings are not authorized by the Federal Rules of Civil Procedure. The directors moved for judgment on the pleadings pursuant to Rule 12(c).[1] No judgment on the pleadings was permissible because the complaint stated a claim for both legal and equitable relief against the directors, and, hence a claim for rescission as to which Lee was an indispensable party. The ruling cannot be sustained by treating the Rule 12(c) motion as if it were a Rule 12(f) motion to strike because Rule 12(f) "is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." (5 Wright & Miller, Federal Prac. & Proc. § 1380, at 782 (1969).) The

district court had no discretion to disregard the Federal Rules of Civil Procedure.

If there were any doubt about the impropriety of the district court's eliminating equitable relief prematurely, it should be dispelled by the Supreme Court's discussion in *J. I. Case Co. v. Borak* (1964), 377 U.S. 426, 435, 84 S.Ct. 1555, 1561, 12 L.Ed.2d 423:

> "Our finding that federal courts have the power to grant all necessary remedial relief [in a securities fraud case] is not to be construed as any indication of what we believe to be the necessary and appropriate relief in this case. We are concerned here only with a determination that federal jurisdiction for the purpose does exist. *Whatever remedy is necessary must await the trial on the merits.*" (Emphasis added.)

The formulation of appropriate equitable relief after liability is decided was reasserted in *Mills v. Electric Auto-Lite Co., supra,* 396 U.S. at 386, 90 S.Ct. 616 relying on *J. I. Case Co. v. Borak.* The Court held that the Court of Appeals "should have affirmed the partial summary judgment on the issue of liability." (*Id.* at 389, 90 S.Ct. at 624.) Although misleading statements made in connection with obtaining proxies, in violation of Section 14(a), did not render the ensuing merger contract void, the contract was voidable at the option of the innocent stockholders. The Court pointed out that equitable relief of all kinds is available to the injured stockholders, once liability is established. The court can set aside the merger, but it does not have to choose that remedy if it is neither practical nor fair under all of the circumstances of the case.

Nothing in *Mills,* nor in any of the cases cited by the majority, remotely supports the majority's conclusion that the district court has any discretion to deny equitable relief before the liability issue has been decided. (*Swanson v. American Consumers Industries, Inc.* (7th Cir. 1973) 475 F.2d 516 (judg-

---

1. At the time the district court ruled, voluminous discovery had been completed. However, no matters outside the pleadings were presented with the Rule 12(c) motion and the extent to which the district court may have relied on the

answers to interrogatories and depositions is unclear. We therefore cannot treat the district court's disposition as one of summary judgment or partial summary judgment. (*A. S. Abell Co. v. Chell* (4th Cir. 1969) 412 F.2d 712.)

ment for defendants after full trial reversed; cause remanded for equitable relief); *Klaus v. Hi-Shear Corp.* (9th Cir. 1975) 528 F.2d 225 (reversal of preliminary injunction; equitable standing of shareholder who did not grant a proxy); *Crane Co. v. Westinghouse Air Brake Co.* (2d Cir. 1969) 419 F.2d 787 (judgment for defendant after full trial on Section 14(a)—Rule 14a–9 issue affirmed; judgment for defendant on Section 9(a)(2) claim reversed).)

*Boggess v. Hogan* (N.D.Ill.1971) 328 F.Supp. 1048, cited by the majority, correctly states the applicable principles. In denying defendants' motion to strike equitable relief from the prayer of the complaint, the court said: "This is not the proper time to determine the appropriate form of remedy, should the plaintiffs prove their case. This court has broad powers of discretion in fashioning suitable relief in securities fraud cases, and to limit the court's alternatives at this stage of the litigation [motion to dismiss the complaint] would be premature and unwise." (Id. at 1054. The court relied upon and quoted *J. I. Case Co. v. Borak, supra,* 377 U.S. 426, 84 S.Ct. 1555.)

Despite the majority's acknowledgement of the principles stated in *Boggess,* it chooses to disregard them because the circumstances of this case are "very unique," selection of remedies after trial would have been "futile and wasteful" as "it is inconceivable that any court . . . could have, justly and fairly, ordered Dr. Lee to reconvey his building." In the first place, unusual circumstances of a particular case supply no excuse for abandoning the Federal Rules of Civil Procedure or for ignoring the teachings of the Supreme Court. In the second place, as the facts recited in the majority opinion reveal, this case is a garden variety securities case, distinguished, if at all, by its simplicity in the proxy field.

No more difficulty is involved in rescinding the sale to Lee than in unwinding any other sale of real property, a function routinely performed by the Chancellor in rescission suits.

The district court had no authority to undertake any equity balancing before deciding liability. The factors stated by the majority to support its view that the equities favored Lee are thus irrelevant. Even if the district court could have looked at the equities, it could not have weighed on the scales, as the majority implies, Lee's litigation expenses or Lee's potential damage claim against the wrongdoing directors. Litigation expenses are the unhappy concomitants of litigation; they fall no less heavily on the innocent stockholder than on the innocent vendee.[2] Exposure of wrongdoing directors to liability if Lee were compelled to reconvey the property to the corporation is not a factor to be weighed in balancing the equities between the stockholders and Lee.[3]

Presumed inadequacy of the legal remedy to compensate for the loss of real property has been the foundation for equitable relief since the beginnings of Chancery. This record supplies no support for the majority's abolishing that age-old presumption and concluding that, if "the plaintiffs ultimately prevail damages would be . . . a perfectly adequate remedy."

I concur in Part IV of the majority opinion.

I would vacate the orders striking the prayer for equitable relief and the *lis pendens* notice.

---

**2.** I assume for the purpose of this discussion that Lee is innocent, as are the shareholders, because there is nothing in this fragmentary record indicating otherwise. That picture of innocence, of course, might change if the case were tried.

**3.** The corporation might be a defendant in a future action by Lee if he were compelled to

return the property to it; but, of course, the ultimate liability for the directors' wrongs falls on the directors, not on the corporation.

The majority's suggestion that Yamamoto may have had unclean hands is not supported by the record; the district court did not purport to rely on the unclean hands doctrine.