**Harry LEWIS, Plaintiff,**

v.

**Jerome DANSKER et al., Defendants.**

**No. 69 Civ. 2741.**

United States District Court,
S. D. New York.

March 30, 1973.

**638**

Pomerantz, Levy, Haudek & Block, New York City, for plaintiff.

Carro, Spanbock & Londin, New York City, for defendants Jerome Dansker, and others.

Mudge, Rose, Guthrie & Alexander, New York City, for defendant Investors Funding Corp. of New York.

Gilbert, Segall & Young, New York City, for defendant Peter K. Grunebaum.

Carb, Luria, Glassner, Cook & Kufeld, New York City, for defendant George E. Lees.

Robinson, Silverman, Pearce, Aronsohn & Sand, New York City, for defendants Seymour Fischman and others.

## MEMORANDUM

LASKER, District Judge.

This is a stockholder's derivative action brought under The Securities Exchange Act of 1934 ("the Act"). Plaintiff alleges that defendants procured shareholder approval at a special meeting of the stockholders for various corporate acts through the use of a proxy statement that was materially false and misleading, in violation of § 14(a) of the Act[1] and S.E.C. Rules 14a–9[2] and 14a–3,[3] 17 C.F.R. § 240.14a–9 and § 240.14a–3.

## THE COMPLAINT

Plaintiff Harry Lewis owned Class A stock of Investors Funding Corporation of New York ("IFC") at the time of the

1. "It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title."

2. "(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

3. "(a) No solicitation subject to this regulation shall be made unless each person solicited is concurrently furnished or has previously been furnished with a written proxy statement containing the information specified in Schedule 14A."

alleged wrongs. The defendants, other than the corporate defendant, are alleged to have been officers and directors of IFC during the period complained of. Defendants Jerome, Norman and Raphael Dansker ("the Danskers") were the principal officers and directors, owning 90% of IFC's Class B stock. Defendant IFC is a New York corporation, which invests in, purchases and sells real estate.

The complaint charges that the defendants, by means of a materially false and misleading proxy statement, procured stockholder approval for three corporate acts:

(1) an employee stock option plan of which the Danskers would be principal beneficiaries; (Complaint Par. 12);

(2) issuance of a total of 30,000 stock warrants of Class A stock to the Danskers at $15. per share;

(3) sale of 15,000 Class A shares to the Danskers at $15. per share, payable by them over twenty quarters by non-interest bearing notes.

Plaintiff claims the proxy statement was false and misleading in (1) failing to disclose the market price of IFC stock at the latest practicable date preceding the stockholder solicitation (Complaint Par. 13(a)) and (2) significantly understating the benefits the Danskers received from their real estate transactions with IFC (Complaint Par. 3(d)).[4]

In addition, as a pendent claim, plaintiff contends that the issuance and sale of 15,000 IFC shares to the Danskers for their promissory notes violated § 504 of the New York Business Corporation Law, McKinney's Consol.Laws c. 4. (Complaint Par. 16.)

Plaintiff seeks to require the individual defendants to account to IFC for all profits or losses resulting from the violations; cancellation of all warrants and options granted under the plans proposed in the proxy statement and rescission of the Danskers' purchase of 15,000 Class A shares.

Plaintiff has now moved for partial summary judgment on liability on the ground that § 14(a) of the Act and Rules 14a–3 and 14a–9 promulgated thereunder have been violated as a matter of law because the proxy statement failed to provide a current market price for IFC stock and because it falsely and

---

4. While plaintiff also charges that the proxy statement failed to disclose "[t]he Danskers domination and control of IFC's board—(Complaint Par. 13(c)) and "the actual value of the consideration to be paid by the Danskers for the Class A shares, i. e., $10.33 per share (being the present worth of $15. payable in quarterly annual installments over 20 years, commencing in January 1970." Complaint Par. 13(b), he has moved for summary judgment only as to paragraphs 13(a) and 13(d) of the complaint. See Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment. The Danskers, however, have cross-moved for summary judgment on sub-paragraphs (a) and (d) as well as (b) and (c) of paragraph 13. See Memorandum of Danskers in Opposition to Plaintiff's Motion and in Support of Defendants' Motion for Summary Judgment. Plaintiff, in his Answering Memorandum to Defendants' Motion for Summary Judgment, has not responded to defendants' contentions relating to sub-paragraphs (b) and (c). Since plaintiff has not responded, summary judgment is granted defendants dismissing the allegations of paragraphs 13(b) and (c) of the complaint. See Rule 56(e). We might add *en passant* that we quite agree with defendants that, with respect to the failure to disclose the "domination" of IFC's board of directors by the Danskers, any shareholder could easily have inferred from the information which was supplied in the proxy statement, that the Danskers were controlling and influential members of the Board and that the purpose of the resolutions was to remunerate the Danskers. See pp. 2–4, 11–3 of proxy statement attached as exhibit to Affidavit of Daniel W. Krasner, dated March 10, 1972.

As to the value of the consideration paid by the Danskers for the Class A shares, the failure of an actuary to reduce the face amount of the notes to their present value can hardly be termed material. What was relevant and obvious on its face, was that interest free notes have a smaller present value than the aggregate face amount of the notes at maturity.

insufficiently described the tax deductions that the Dansker defendants might gain (through the use of various partnerships) as a result of the approved transactions. Defendants cross-move for summary judgment on the grounds that none of the allegations state a claim under § 14(a) or the S.E.C. rules. Alternatively, defendants, on the authority of Rosenfeld v. Black, 445 F.2d 1337, 1341 fn. 5 (2d Cir. 1971) seek to stay this action pending disposition of a similar action between the parties in New York Supreme Court.[5]

## THE STAY

As a threshold matter, it is necessary to determine whether the court should stay this action until the New York suit brought by plaintiff against the same defendants in the New York Courts is determined. Chief Judge Friendly in Rosenfeld, supra, "unreservedly condemn[ed]" the practice utilized in stockholder suits of commencing simultaneous actions in both the state and federal courts. A comparison of the state and federal pleadings here reveals that the complaints are substantially similar so that under ordinary circumstances the rationale of Rosenfeld would apply.

▇▇▇ However, in determining whether a stay is appropriate an important factor to be considered is the relative postures of the two actions. In Rosenfeld, a substantial burden was placed on the New York courts because they were required to pass upon a considerable number of motions "to no effect

whatsoever." Here, in contrast, no action has been taken in the state court, beyond serving of the complaint and answer. (see letter of Reginald Duff, dated December 15, 1972), while the record to date in this action has burgeoned due, in large part, to the motions for summary judgment.

Since many of the issues presented on these motions are solely questions of law, and since the state action has remained inert, it is proper for us to decide these motions, the rationale of Rosenfeld notwithstanding. Were plaintiffs to now reactivate the state action, we hope, in the words of Chief Judge Friendly, the "state judges would feel . . . free to take appropriate action to avoid this sort of imposition." Rosenfeld at p. 1341, fn. 5.

## THE MOTIONS FOR SUMMARY JUDGMENT [6]

### The Non-Disclosure of the Current Market Price of IFC.

Plaintiff contends that as a matter of law § 14(a) of the Act was violated because the proxy statement omitted to state the current market price of IFC as required by Item 11(a) of Schedule 14a, under S.E.C. Rule 14a–3, which reads:

"If action is to be taken with respect to the granting or extension of any options, warrants or rights to purchase securities of the issuer or any subsidiary, furnish the following information:

" * * * (iv) the market value of the securities called for or to be

---

5. Defendant Pearson moves for summary judgment dismissing the complaint as to him on the ground that he ceased to be a director some months prior to the acts in suit. Plaintiff states that he "has no basis for opposing [the] motion." Plaintiff's Answering Memorandum, p. 5. Accordingly, Pearson's motion is granted.

6. On their cross-motion for summary judgment, defendants contend that, for a number of reasons, no cause of action is stated under 10(b) of the Act, rather half-heartedly invoked by plaintiff in paragraph 19 of the complaint. In his answering memorandum, plaintiff states:

"It is true that the complaint—charges violation of § 10(b) as well as under § 14(a) of the Exchange Act. For purposes of the present motions for summary judgment, however, we are content to rely on § 14(a)." However, since defendants have moved for summary judgment dismissing the 10(b) allegations, plaintiff, as the adverse party, "must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). Since the plaintiff, as indicated by his own statement, has failed to respond, summary judgment is granted dismissing the complaint with respect to 10(b) allegations.

called for by the options, warrants or rights, as of the latest practicable date; * * * "

■ Defendants concede that the market price on the "latest practicable date" (January 31, 1969, the date the proxy was issued), $31. per share, was not disclosed, and that the proxy material inadvertently mentioned the market price for August 28, 1968, $17.50 per share [Defendants Danskers' 9(g) Statement.] Defendants ascribe the error and omission, however, to an oversight on the part of the attorneys who prepared the proxy statement. (Affidavit of Jerome Dansker, dated April 7, 1972). Whether this excuse is offered as a legal defense or not is unclear. In any event, it hardly needs saying that oversights on the part of attorneys constitute no defense to § 14(a) violations. Were it otherwise, of course, the congressionally mandated policy of full and strict compliance with the disclosure requirements of § 14(a) could be substantially thwarted.

■ On their cross-motion for summary judgment, defendants further argue that because none of the warrants or options granted under the first two corporate resolutions have been exercised, no injury has been visited upon the corporation and, hence, no cause of action is stated. Plaintiff correctly points out, however, that where, as it is claimed here, options or warrants are granted without fair consideration to the corporation, they dilute the equity of the shareholders, and cause consequent loss. Defendants' further efforts to prove lack of injury—that the warrants are restricted and therefore not freely tradable and that IFC stock is now selling below the exercise price of the options—are unavailing since it is entirely possible that the market price will rise; and the restrictions on the warrants may be removed, merely by registration by the Danskers themselves. In any event, these arguments are somewhat beside the point, for at this juncture it is only necessary to determine whether liability may exist and not the extent of injury, if any.

■ It is clear, then, with respect to the first two corporate resolutions (i. e., the granting of the options and of the warrants), that Item 11(a) of Rule 14a–3 has been violated. Accordingly, summary judgment is granted in favor of plaintiffs on this ground.[7]

■ Defendants are correct, however, that as to the third corporate resolution —the outright sale of stock—Item 11(a) has no application since that section only refers to "options, warrants or rights" and the sale of stock does not fall under any of those categories. Apparently not disputing this interpretation, plaintiff, in his answering memorandum (p. 5), falls back on the more generalized mandate of Rule 14a–9.

■ The question, therefore, narrows to whether the admitted omission to state the market price was material as to approval of the stock sale. Plaintiff argues that an investor, reasonably relying upon the erroneously lower market price provided him in the proxy statement, would be misled into believing he was conferring a much smaller benefit upon the directors, and therefore, as a matter of law, the omission was material. Defendants argue, on the other hand, that the market price of IFC was regularly published in the newspapers,

7. Defendants George Lees, Seymour Fischman and Robert M. Rose move for summary judgment dismissing the complaint as to them on the separate ground that since they did not receive any stock options or warrants, nor did they have any interest in the partnerships, they did not profit from any of the transactions alleged to have been improper, and that, accordingly, no cause of action is stated as to them. Whether these defendants profited from any of the transactions is beside the point. The crux is whether these defendants have violated their fiduciary obligations to comply with the securities laws, and as to this question the record is barren of proof. It would, therefore, be inappropriate to dismiss as to them at this stage of the proceedings.

was available from brokers or the ticker tapes, and was freely discussed at the stockholders' meeting. The arguments on both sides are reasonable and persuasive but, rather than eliminating factual issues, they create them. The issue of materiality here is clearly one on which reasonable men may differ and should be resolved by the trier of the facts. The presence of this genuine issue as to a material fact prevents the grant of summary judgment to any party, and both plaintiff's and defendants' motions are, therefore, denied.

*The Failure of the Proxy Statement to Describe the Tax Benefits to the Danskers.*

Item 7(f) of Schedule 14A of S.E.C. Rule 14a–3 requires a proxy statement to . . .

"Describe briefly any transactions since the beginning of the issuer's last fiscal year or any proposed transactions, to which the issuer or any of its subsidiaries was or is to be a party, in which any of the following persons had or is to have a direct or indirect material interest, naming such person and stating his relationship to the issuer, the nature of his interest in the transaction and, where practicable, the amount of such interest:

"(1) Any director or officer of the issuer;

" * * * * "

However, an exemption is in Instruction 2 to Item 7(f):

"2. No information need be given in answer to this Item 7(f) as to any transaction where—

" * * * *

"(c) The amount involved in the transaction or a series of similar transactions, including all periodic installments in the case of any lease or other agreement providing for periodic payments or installments, does not exceed $30,000;"

The proxy in question (p. 11) sets forth with reference to partnerships in which the Danskers were general partners and whose function it was to raise capital for IFC, eliminate losses for IFC, and give investors the opportunity to realize capital gains or losses, that:

"Neither Jerome, Norman nor Raphael M. Dansker received benefits totalling $30,000 from these 14 partnerships during 1968." (p. 11)

Plaintiff contends this statement was false because two of the Danskers received losses from the partnerships in excess of $30,000. which were deductible from their income taxes.

While not disputing that the two named Danskers did, indeed, incur deductible losses in excess of $30,000, defendants vigorously maintain that losses reportable on one's individual return are not the type of information reportable under Rule 14a–3, Schedule 14, Item 7(f). Furthermore, they argue that the statement quoted above is not violative of Rule 14a–9.

We agree with defendants on both counts. Items 7(a) through 7(e) of Schedule 14A, title "Remuneration and Other Transactions with Management and Others," all require disclosure of remuneration or something of value affirmatively passing from the corporation to the officers or directors. While Item 7(f) appears to be a catch-all section, it would be expanding excessively the concept of an "indirect material interest" to require merely potential tax benefits received on one's individual return to be reported under this section. We think that the interpretation of "indirectness" suggested by the defendants is reasonable and consistent with the underlying thrust of Schedule 14A: that something of positive value must pass from the corporation to the insider in order to come within the reporting requirements of the rule. Here, although the Danskers may have received *incidental* benefits through transactions entered into between the partnerships and IFC, they did not receive something of value passing either directly or indirectly from the corporation to them.

Though there is no guidance either from case law or from the instructions to Schedule 14A, as to the meaning of "indirect material interest," consideration of the practicalities involved in reporting deductible losses under this section support our conclusion. First, the usability of such losses will vary—not exclusively according to the source of the deduction—but also according to the individual's other income, offsets to income, and tax bracket. Therefore, revelation of the tax losses incurred would be unenlightening to the stockholder to whom the proxy was addressed. Second, since the amount of tax benefit received depends on one's other income, deductions and tax bracket, it is impossible to determine what those losses will be until the end of the taxpayer's tax year. Here the partnership returns were prepared in February 1969—*after* the proxy statement had been sent to IFC shareholders.

Furthermore, it should be noted that Item 7(f) requires the reporting of indirect *material* interests. The test of "materiality" is whether "the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." Mills v. Electric Auto-Lite Co., 396 U.S. 375 at 384, 90 S.Ct. 616 at 621, 24 L.Ed.2d 593 (1970). *See also* List v. Fashion Park, Inc., 340 F.2d 457, 462 (2d Cir. 1965); 2 L. Loss, Securities Regulation 917 (2d ed. 1961). The alleged falsity must have "a significant *propensity* to affect the voting process . . . and . . . a cause of action cannot be established by proof of a defect so trivial, or so unrelated to the transaction for which approval is sought, that correction of the defect or imposition of liability would not further the interests protected by § 14(a)." Mills v. Electric Auto-Lite Co., *supra* 396 U.S. at 384, 90 S.Ct. at 621.

We fail to see, nor has the plaintiff advanced any reason, why an investor, in deciding whether to approve the three proposals, would have been influenced one way or the other by the amount of incidental tax benefits the Danskers received from transactions between the partnerships and the corporation which benefits were not derived from nor had any relation to the proposals themselves. What was absolutely obvious on the face of the resolutions was that they would confer significant benefits upon the Danskers.

We believe that the interest of a shareholder asked to approve these transactions would be limited to two questions: Would the benefits to be conferred on the Danskers (1) adversely affect the corporation or (2) adversely affect the investor's individual interest in the corporation? Clearly, the amount of tax savings the Danskers would receive could not be said to have any bearing on these considerations. Thus, whether the alleged defect be termed a positive misrepresentation or a failure to disclose, we find the defect immaterial as a matter of law because of its inconsequentiality and its unrelatedness to the three proposals.[8]

Finally, even assuming the relation of the partnerships to the corporation had any significance, we think that the complete statement (in which context the disputed statement appears) concerning the partnerships quite adequately informed the investor:

"Jerome, Norman and Raphael M. Dansker, or any one of them, have from time to time participated in partnerships that have had transactions with the Corporation. There are now 14 such partnerships, in which either they have made investments of their own personal funds or corporations which they and their respective families control have made such investments. In all such partnerships, profits and losses are shared in proportion to the amounts invested. Their interests in the aggregate capital of the 14 partnerships range from $1,029 to

8. For the above reasons, we find no violation of Rule 14a–9 as well.

$185,000. Neither Jerome, Nathan nor Raphael M. Dansker received benefits totalling $30,000 from these 14 partnerships during 1968. They have not received any remuneration for services from any of the partnerships in which they invested their own funds."

## THE STATE PENDENT CLAIM

Since jurisdiction exists under the Act and we have granted judgment on some of those claims, and since the state claim presents solely a question of law, it is appropriate for us to decide the pendent claim.

 Here plaintiff moves for summary judgment on the ground that the third corporate proposal—the outright sale of 15,000 IFC shares to the Danskers evidenced by a series of non-interest bearing promissory notes—is violative of § 504 of the New York Business Corporation Law. We agree.

Section 504(b) states in pertinent part:

"(b) Neither obligations of the subscriber for future payments nor future services shall constitute payment or part payment for shares of a corporation."

It is clear the prohibition of section (b) was violated since the promissory notes constitute "obligations of the subscriber for future payments." If there were any doubt about this construction of the statute it is quickly dispelled by an examination of the legislative background of § 504 (as set forth in 6 McKinney's Consolidated Laws of New York). It is indicated there that Paragraph (b) is derived from Model Business Corporation Act § 18 (sic § 19) and is consistent with the old Penal Law § 664(3). Section 19 of the Model Act states:

"Neither *promissory notes* nor future services shall constitute payment or part payment for the issuance of shares of a corporation." (emphasis supplied)

And, § 664(3) of the Penal Law made it a misdemeanor for a director to authorize the corporation . . .

"To discount or receive *any note* or other evidence of debt in payment of an installment of capital stock actually called in, and required to be paid, or with intent to provide the means of making such payment;" (emphasis supplied)

See also 2 White on New York Corporations 504.03 (1972) ("A mere promise to pay money in the future, such as a promissory note . . . does not constitute payment or part payment for shares of a corporation although it may otherwise constitute good consideration to sustain a contract at common law.") Since the promissory notes were not secured or otherwise collateralized, we need not decide whether a collateralized agreement to pay would remove it from the reach of paragraph (b) of § 504 as suggested by the defendants in reliance on American Radiator and Standard v. U. S., 295 F.2d 939, 155 Ct.Cl. 515 (1961).

 The Danskers would have us limit the prohibition of § 504 to newly formed corporations which, they argue, are more in danger of becoming insolvent than established businesses. No authority or legislative material is cited to support this interpretation. [On the contrary, the broad reach of the statute suggests that creditors, the public and other stockholders were to be protected at all times during the life of the corporation.]

 Defendant Grunebaum argues there was no violation of § 504 because the stockholders ratified the proposal. However, it is hornbook law that stockholders may only ratify and render valid acts done or authorized by the board of directors, but which were beyond the powers of the directors, *if the stockholders themselves could have authorized such acts*. See Fletcher on Corporations, § 764 Vol. 2. Since the sale of the stock here was expressly prohibited by § 504 the "ratification" was, therefore, in-

effective. Furthermore, since the statute is designed, in part, to protect creditors of the corporation, it would defeat its purposes to allow the stockholders to ratify the proposal.

The cases cited by defendant Grunebaum, Kimmel Sales Corp. v. Lauster, 167 Misc. 514, 4 N.Y.S.2d 88 (Sup.Ct., Monroe Co. 1938) and Usher v. Schenectady Mason Supply Corp., 278 App.Div. 610, 102 N.Y.S.2d 93 (3d Dept. 1951), though running counter to the principle referred to above, presented exceptional circumstances not here present. In *Kimmel* the plaintiff, a stockholder, sought to cancel shares of issuance of stock to the defendants on the ground that the shares were transferred for inadequate consideration, in violation of § 69 of the Stock Corporation Law, the predecessor statute to § 504. The court did not disturb the transaction "[i]nasmuch as [the payments of monies paid out of the corporate treasury] represented personal liabilities of [Kimmel's] own and were acquiesced in by all of the stockholders of the corporation and no rights of creditors [were] involved . . ." *Kimmel, supra* 4 N.Y.S.2d at 93. Here the picture is altogether different. Although the record does not indicate whether IFC had creditors, it can safely be assumed it does since it is a large public corporation. Moreover, defendants have admitted that there were dissenting shareholders. See Dansker Affidavit, par. 6.[9]

Again, the *Usher* case involved another close corporation where the issuance of stock for no consideration was ratified "by men who were not only officers of the corporation, but its only stockholders . . ." *Usher, supra* 102 N.Y.S.2d at 94. The question of creditors was not considered by the court.

In summary:

1. Defendants' motion for a stay is denied.

2. Plaintiff's motion for summary judgment as to matters covered by the first two corporate resolutions enumerated in the body of this opinion, on the ground that Rule 14a–3 has been violated, is granted.

3. Plaintiff's motion for summary judgment as to the third resolution enumerated in this opinion on the ground that Rule 14a–3 is violated is denied and defendants' motion on that issue and ground is granted.

4. Plaintiff's motion for summary judgment as to the third resolution enumerated in this opinion on the ground that it violated Rule 14a–9 is denied, and defendants' motion for summary judgment on the same issue and ground is also denied since a genuine issue as to a material fact remains outstanding.

5. Plaintiff's motion for summary judgment on the ground that the proxy statement violated Rules 14a–3 and 14a–9 because it failed to describe potential tax benefits to the Danskers is denied, and defendants' motion for summary judgment on this issue is granted.

6. Plaintiff's motion for summary judgment that defendants have violated Section 504(b) of the New York Business Corporation Law is granted.

7. Defendants' motion for summary judgment dismissing the allegations of the complaint that the defendants violated Section 10(b) of the Act is granted.

8. Defendant Pearson's motion for summary judgment dismissing the entire complaint as to him is granted.

9. The motions of defendants Lees, Fischman and Rose to dismiss the entire complaint as to them are denied.

10. The Danskers' motion for summary judgment dismissing the complaint as to paragraphs 13(b) and 13(c) is granted.

Submit order on notice.

---

9. Assuming plaintiff Lewis voted in favor of the proposals (and there is no indication in the record whether he did or did not), it is clear there was no waiver since (1) Lewis is suing derivatively and could not waive the rights of other stockholders, and (2) it is not even claimed by defendants that Lewis was aware of the alleged violations at the time he cast his vote.