Harry LEWIS, Plaintiff,

v.

Jerome DANSKER et al., Defendants.

No. 69 Civ. 2741.

United States District Court,
S. D. New York.

Nov. 4, 1974.

On Motion for Relief from Judgment
June 25, 1975.

See also D.C., 357 F.Supp. 636.

Pomerantz, Levy, Haudek & Block, New York City, for plaintiff by Robert B. Block, Daniel W. Krasner, Roger W. Haudek, New York City, of counsel.

Carro, Spanbock, Londin, Rodman & Fass, New York City, for defendants Jerome Dansker, Norman Dansker and Raphael M. Dansker by Reginald Leo Duff, New York City, of counsel.

Mudge, Rose, Guthrie & Alexander, New York City, for defendant Investors Funding Corporation of New York by Henry Root Stern, Jr., New York City, of counsel.

## MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

This is a stockholder's derivative suit brought under the Securities Exchange Act of 1934 ("the Act") and the New York Business Corporation Law ("BC L") on behalf of Investors Funding Corporation ("IFC") against various officers and directors of that company. The defendants include three brothers, Jerome, Raphael and Norman Dansker. It is only with those three that this opinion is concerned.

The complaint alleges that the defendants (including the Danskers) solicited and procured shareholder approval for three corporate acts by means of a proxy statement that was legally inadequate and materially false and misleading, in violation of § 14(a) of the Act and SEC Rules 14a–3 and 14a–9, 17 C. F.R. § 240.14a–3 and § 240.14a–9 (1947). The three corporate acts so approved were:

(1) an employee stock option plan of which the Danskers would be principal beneficiaries;

(2) issuance to the Danskers (at no cost) of warrants to purchase 30,000 shares of Class A stock at $15 per share;

(3) sale of 15,000 Class A shares to the Danskers at $15 per share, payable by them by non-interest bearing notes.

With respect to the above-mentioned sale of 15,000 Class A shares in return for promissory notes, the complaint further asserts a pendent claim that the sale violated § 504 of the New York Business Corporation Law (BCL), McKinney's Consol. Laws, c. 4.

In addition, the complaint (in paragraphs 13 and 14) alleges a wholly independent state claim of self-dealing, charging that the Danskers breached their fiduciary duty as directors by failing to disclose the "large benefits and profits" they gained from numerous real estate transactions between IFC and certain partnerships of which they were members.

For these alleged violations, the complaint demands that defendants be required to account to IFC for all resulting profits or losses; that all warrants and options granted to the Danskers under the plans proposed in the proxy statement be cancelled; and that the Danskers' purchase of the 15,000 Class A shares be rescinded.

Two months prior to commencement of this action, plaintiff had instituted a similar suit in the New York state courts. An examination of the complaints in both actions reveals that the allegations in the federal complaint are almost indentical to those in the state complaint, with the exception of the federal securities law claims. The only other major difference between the two complaints—and it is only a difference of degree—concerns the claim of self-dealing in paragraphs 13 and 14 of the federal complaint and paragraphs 7–9 of the state complaint. Whereas the federal complaint merely alleges, in rather non-specific language, that the Danskers engaged in self-dealing by means of

transactions between IFC, of which they were directors, and partnerships of which they were also members, the state complaint is much more specific as to dates, names of the partnerships, types of transactions and the details of self-dealings.

Upon completion of discovery in the federal action, plaintiff moved before Judge Morris Lasker for partial summary judgment on liability alone, on the ground that § 14(a) of the Act and Rules 14a–3 and 14a–9 promulgated thereunder had been violated as a matter of law because the proxy statement failed to provide the current market price for IFC stock and because it falsely and inadequately described the tax advantages that the Danskers might gain as a result of the approved transactions. The defendants made various cross-motions. The Danskers' motion was for summary judgment on the ground that none of the allegations stated a claim under § 14(a) or the SEC Rules. Alternatively, the Danskers sought to stay this action pending disposition of the state court action.

Judge Lasker, by a memorandum opinion dated March 30, 1973 and reported at 357 F.Supp. 636, made the following disposition of the above motions:

(a) Plaintiff's motion for summary judgment as to the options and warrants, on the ground that Rule 14a–3 had been violated— granted

(b) Plaintiff's motion for summary judgment as to the sale of stock, on the same ground—denied, and judgment granted to defendants on their cross motion

(c) Plaintiff's motion as to the options and warrants, on the ground that the failure to disclose the current market price of the stock violated Rule 14a–9—denied

(d) Plaintiff's motion for summary judgment on ground that proxy statement's failure to describe potential tax benefits to the Danskers violated Rules 14a–3 and 9— denied, and judgment granted to defendants on their cross motion [1]

(e) Plaintiff's motion for summary judgment on ground sale of stock for promissory notes violated BCL § 504—granted

(f) Defendants' motion for summary judgment dismissing all allegations that they had violated Section 10(b) of the 1934 Act— granted

(g) Motion for a stay of federal action—denied.

The Danskers then moved for, and were granted, reargument of Judge Lasker's decision on three grounds. First, that the Court's refusal to grant a stay was improper in light of Rosenfeld v. Black (2d Cir. 1971) 445 F.2d 1337. Judge Lasker disagreed and adhered to his earlier decision. Second, the Danskers argued that a showing of materiality of omission was a prerequisite to a finding of any proxy rule violation and that the Court improperly assumed the "materiality" of the omission of the current market price in granting summary judgment to the plaintiff as to the Rule 14a–3 violation. Finding nothing in § 14(a), Rule 14a–3, Item 11 of Schedule 14, the legislative history or the cases decided under § 14(a), requiring such an antecedent showing of materiality, Judge Lasker "decline[d] to interpolate such a requirement". *Lewis v. Dansker* (S.D.N.Y. (Aug. 23, 1973) CCH Fed. Sec.L.Rep. ¶ 94, 141 at p. 94, 603.

The Danskers now move for summary judgement as to damages, and renew their motion as to the Rule 14a–9 allegations and their previously twice denied request for a stay of the self-dealing cause of action.

---

1. Since the issue of tax benefits was not raised again by the parties, we shall not discuss it further in this opinion.

With respect to damages, their position is that on no view of the facts would plaintiff be entitled to more than the Danskers are now willing to yield, namely, entry of judgment voiding the unexpired options and restricted warrants, rescinding the sale of 15,000 Class A shares, directing the Danskers to surrender the shares, together with all stock and cash dividends received therefrom, and ordering the return to the Danskers of the remaining unpaid notes.[2]

With respect to the alleged Rule 14a–9 violations, defendants basically seek to reargue questions already determined by Judge Lasker. The complaint had alleged that the defendants' failure to disclose in the proxy statement * the current market price for IFC's Class A stock violated Rule 14a–9 in that it constituted an omission of a "material" fact. In support of this allegation, plaintiff argued that the shareholders, reasonably relying on the lower market price provided them, were misled into believing that they were conferring a much smaller benefit on the defendants than they actually were. Defendants countered with the assertion that the shareholders could not have been misled—and thus the omission was not "material"—because the current market price of IFC stock was regularly published in newspapers, was available from brokers or the ticker tapes and was freely discussed at the stockholders' meeting. Moreover, the likelihood that they would be familiar with the current market price of their own stock was much greater than in merger situations, for example, where shareholders are asked to vote on the acquisition of another, relatively unfamiliar, corporation. Judge Lasker found that

> "[t]he arguments on both sides are reasonable and persuasive but, rather than eliminating factual issues, they create them. The issue of materiality here is clearly one on which reasonable men may differ and should be resolved by the trier of the facts." 357 F.Supp. at 642.

The defendants are now seeking to relitigate these issues, but neither party has raised additional arguments that were not already heard by Judge Lasker. We agree with Judge Lasker that those arguments which have been made serve only to demonstrate the existence of genuine issues of fact, thus precluding summary judgment and necessitating presentation of the issue to the trier of fact.[3]

With respect to the application for a stay of the federal action pending the outcome of the state action, the Danskers point out that the situation is now different than when the matter was before Judge Lasker in that the prior state court action is now being "actively prosecuted."

---

2. In their moving papers, the defendants offered, as an alternative to court-ordered rescission and return of money received, to submit a resolution to the stockholders at their next meeting. The defendants have since abandoned this proposal. They also had initially sought a court order directing the corporation to return the $150,000 already paid on the notes. At oral argument, however, they agreed to the corporation's retention of the money should the court cancel or order the return of the remaining notes.

* The current market price at the time of the issuance of the proxy statement (January 31, 1969) was $31 per share. The price listed in the proxy statement—$17.50 per share— was the price as of August 28, 1968.

3. Judge Lasker's ruling applied to all three corporate acts which had been approved by the shareholders on the basis of the legally inadequate proxy statement, but in view of our disposition (see *infra*) of the claims concerning the sale of stock, the Rule 14a–9 claim as it relates to that transaction is dismissed as moot. With respect to the remaining two corporate acts—the granting of options and the issuance of warrants—we see no reason to disturb Judge Lasker's ruling.

## A. *Warrants and Options*

In his complaint, plaintiff sought cancellation of all warrants and options issued to the Danskers and rescission of their purchase of 15,000 Class A shares. The Danskers, in their present motion for summary judgment, are asking for the very relief that plaintiff initially sought: cancellation and rescission. But plaintiff, apparently relying on his complaint's prayer for "other and different relief", has now changed tack. Insofar as the warrants and options are concerned, plaintiff now claims that the defendants converted corporate property in obtaining them by means of an illegal proxy statement and that the law requires that they account to the corporation for the value of what they received as of the time of receipt.[4] Insofar as the purchase of the 15,000 shares are concerned, plaintiff now seeks to enforce the corporation's right to compel the defendants to complete payment therefor.[5]

The defendants claim that the corporation has suffered no injury as a result of their "technical" violation of the proxy rules since they never exercised the illegally obtained warrants and options. Plaintiff counters with the assertion that the defendants' retention for five years of these options and warrants, albeit in a falling market, diluted the corporation's equity by creating the potential for a substantial call thereon.

 The defendants have questioned the propriety of plaintiff's midstream switch in relief sought, from cancellation to restitution, but we can find no authority which binds plaintiff to the initial relief sought and precludes him from conforming his prayer for relief to changing circumstances. The common law rule regarding election of remedies—that the bringing of an action for damages precludes a plaintiff from seeking restitution, or vice versa—has been weakened by exceptions and largely abandoned in most states, including New York. Civil Practice Law and Rules § 3002(e) (McKinney's Consol. Laws c. 8 1974). The rule was designed to prevent an unjust shifting from one remedy to another when such a shift would be harmful and unjust to the defendant. Even after bringing an action for a particular remedy, the plaintiff was permitted to switch so long as the defendant had not so altered his position as to make it unjust to permit the change. Restatement of Contracts § 381 (comments). The defendants have not apprised us of, nor can we imagine, any change of position that they may have made in reliance on plaintiff's original prayer for relief. Moreover the defendants have cited no authority, federal or/ state, which prevents us from fashioning whatever remedy we may—after trial— conclude to be appropriate. In fact, the law is precisely the opposite. Upon finding a violation of the proxy rules, a court should be "alert to provide such remedies as are necessary to make effective the Congressional purpose." J.I. Case v. Borak (1964) 377 U.S. 426, 433, 84 S.Ct. 1555, 1560, 12 L.Ed.2d 423. The courts have repeatedly emphasized their inherent equitable power to fashion whatever remedy the circumstances dictate. Mills v. Electric Auto-Lite (1970) 396 U.S. 375, 387, 90 S.Ct. 616, 24 L.Ed.2d 593; In re Caeser's Palace Securities Litigation (S.D.N.Y.1973) 360 F.Supp. 366, 392. They are not limited by the plaintiff's prayer for relief, but may instead grant damages where

---

4. At the time the defendants were issued the warrants at $15 per share, IFC stock was selling at $31 per share. Similarly, the options were issued at 40% below the current market price. The warrants were therefore worth $16 each. Since then, the value of IFC stock has plummetted to $2 per share and most of the warrants have expired unexercised, or will expire shortly. All of the options have expired, unexercised.

5. The 15,000 shares were sold for $225,000, evidenced by promissory notes: $147,000 has been paid, while $78,000 remains due and owing.

rescission was requested, or an injunction where an accounting was sought.[6] *Cf.* J. I. Case v. Borak, 377 U.S. at 433–434, 84 S.Ct. 1555.

█ There can be no doubt but that the corporation suffered technical damage by granting these options and warrants—they represented a call on the corporation's equity and for 5 years diluted corporate assets. Although the corporation did not issue the options and warrants in order to raise money, but rather to benefit the Danskers, the very fact of such issuance necessarily dilutes the value of any similar warrants and options the corporation might issue for the purpose of raising money. Regardless of whether it ever did in fact want to raise additional capital, its ability to do so was impaired and such impairment must be deemed a legal wrong resulting directly from the violations of Rule 14a–3.

Having determined that the corporation was injured as a result of the violations of Rule 14a–3, it is for the trier of fact to measure the injury and fix damages. In doing so, however, it will be guided by the principle embodied in § 28 (a) of the Act, that recoverable damages are limited to "actual damages"—that which the corporation suffered as a result of the Rule 14a–3 and BCL violations.[7] The arguments the defendants have addressed to us might well convince the trier of fact that such actual damages were minimal. However, such arguments do not justify a ruling that damages are non-existent.

B. *The 15,000 Class A Shares*

To redress the wrong done the corporation by the illegal issuance of stock in return for promissory notes, plaintiff is seeking an order directing the defend-ants to pay approximately $78,000, which constitutes the remainder of the full purchase price of $225,000. Although this would seem to have the effect of validating an invalid transaction, the court concludes that plaintiff is entitled to the relief requested.

█ In determining this pendent claim, we are, of course, bound by New York law. The former New York Stock Corporation Law ("SCL"), which was, in part, the predecessor of the present Business Corporation Law, had a provision stating that every holder of stock "not fully paid" shall be personally liable to the creditors of the corporation, "to an amount equal to the amount unpaid on the shares held by him for debts of the corporation . . ." (SCL § 70). It is important to note that this statutorily created liability was to corporate creditors, and not to the corporation itself.

To understand the significance of this section as it bears on the issues now before us, we must consider the distinction between "unpaid" stock and "watered" stock. *Cf.* State of New York Joint Legislative Committee to Study Revision of Corporation Laws, Research Outline Analysis § 2.22: "Liability of Subscribers and Shareholders" (1958). While the concept of "unpaid" stock implies a breach of the terms of the contract of sale by the shareholder's default on a commitment to pay, that of "watered" stock implies the issuance by the corporation of its shares without receipt by it of the consideration required by law, and without any contractual obligation upon the stockholder to make further payment. Examples of the latter concept include shares issued as a gift, on stock issued for consciously over-valued property.

---

**6.** It is important to distinguish these situations from one in which the plaintiff has actually waived his right to one form of relief. In that instance, the court and the plaintiff are bound by his election. Ainslie v. Sandquist (D.Mass.1967) 270 F.Supp. 382, 388.

**7.** It is not material to this motion to determine whether plaintiff could establish that the Danskers' conduct had been "willful", thus entitling the corporation to anything in the nature of punitive damages.

When § 70 was in effect, its provisions limiting remedies to creditors was applied only to "watered stock" as above defined. With respect to "unpaid" stock, the corporation, as a party to the contract of subscription or sale, was always deemed able to enforce its common law contractual rights to payment. Bottlers Seal Co. v. Rainey (1926) 243 N.Y. 333, 153 N.E. 437.

In brief, the limitations contained in § 70 applied only to the statutory right created by that section, the right to compel the holder of "watered" stock to make payments for which he had never contracted. These limits were never intended to cut down the rights of a corporation against any shareholder with whom it had a contract.

Against this common law and statutory backdrop, New York courts have fashioned remedies for the issuance of "watered" stock, which were dependent upon who was suing. If a corporate creditor were suing the holder of watered stock, the defendant shareholder was liable to the extent of the inadequacy of the consideration. Lamphear v. Lang (1913) 157 App.Div. 306, 141 N.Y.S. 967. This meant a creditor could sue the defendant stockholder in tort for conversion of corporate assets, or waive the tort and recover on the implied contract. Id., 141 N.Y.S. at 969–970. On the other hand, should a shareholder, or the corporation itself, be suing, the appropriate remedy was cancellation of the stock and rescission of the contract of sale. American Macaroni Corporation v. Saumer (Sup.Ct.Erie Co.1919) 174 N.Y.S. 183, 184, Kimmel Sales Corp. v. Lanster (Sup.Ct.Monroe Co.1938) 167 Misc. 514, 4 N.Y.S.2d 88, 94.

In 1961, the New York Legislature enacted BCL § 628—effective September 1, 1963—which, in replacing SCL § 70, enlarged a shareholder's personal liability for the purchase price of his watered stock to include both corporate creditors and the corporation itself. To quote from the official comments following § 628,

> "The liability can thus be enforced by the corporation, a receiver, a trustee in bankruptcy or a judgment creditor *and can be enforced for the benefit of shareholders as well as creditors.*" (emphasis supplied).

As a result of the foregoing change in statutory law, the corporation—and hence a shareholder suing on its behalf—now has the option of either seeking cancellation of the "watered" stock, as before, or suing for the full purchase price therefor, much as a corporate creditor could do under SCL § 70. It also would appear from a reading of the legislative history of BCL § 628, that the Legislature did not intend that § 628 should in any way affect the corporation's right to enforce its common law contractual right to the full purchase price on "unpaid" stock.

■ Applying these state rules to the facts at bar, it is apparent that the corporation—and hence the plaintiff suing on its behalf—is entitled to compel the Danskers to complete payment for their stock. If the notes given in payment are valid, the corporation can enforce its common law right for their payment.[8] If for any reason such notes are invalid, the corporation can enforce its statutory rights against the defendants as holders of "watered" stock.

## C. *Pending State Court Action*

■ The defendants have moved to stay prosecution of the breach of fiduci-

8. For the contrary proposition, defendants cite B&C Electrical Construction Co. v. Owen (4th Dept. 1917) 176 App.Div. 399, 163 N.Y.S. 31, 32, aff'd, 227 N.Y. 569, 126 N.E. 927 (1919), American Macaroni Corp. v. Saumer (Sup.Ct., Erie Cy., 1919) 174 N.Y.S. 183, 184. See also, Kimmel Sales Corp. v. Lauster (Sup.Ct., Monroe Cy., 1938) 167 Misc. 514, 4 N.Y.S.2d 88. Upon analysis, it will be found that all of the above cases, which were decided prior to the enactment of § 628 of the BCL, dealt with "watered" stock.

ary duty claims, which are also pending in the almost identical lawsuit involving the same parties in New York Supreme Court. Plaintiff has consented to such a stay, on condition that defendants consent to as full discovery in the state proceeding as would be permitted in a federal action.

When this application for a stay was before Judge Lasker, the prior state court action was relatively inert: "no action ha[d] been taken in the state court, beyond serving of the complaint and answer." Lewis v. Dansker, *supra*, 357 F.Supp. at 640. As a result, Judge Lasker was able to distinguish Rosenfeld v. Black, *supra*, which had "unreservedly condemned" the practice of commencing simultaneous stockholder actions in both state and federal courts, and had ruled (445 F.2d Fn. at 1341 n. 5):

"[d]istrict judges should feel free to make use of their power to stay the federal action unless the state action is discontinued, when no good reason for simultaneous maintenance of the state suit can be shown."

Judge Lasker's "good reason" for declining to stay the federal action was that the state proceeding was relatively inactive compared to the "burgeon[ing]" record in the federal action.

Since then, however, the state action has been revitalized by the commencement of discovery. Thus the rationale for the earlier refusal to stay the federal action no longer obtains. Moreover, the claims that the defendants breached their fiduciary duty as directors by engaging in self-dealing—which are those being litigated in the state action—involve questions of state, and not federal, law and are wholly unrelated to the other claims raised in the instant complaint and heretofore litigated before Judge Lasker and me. It would, therefore, appear to be more appropriate for the state than the federal court to resolve these claims. The stay is accordingly granted without the conditions requested by the plaintiff.

Submit order on notice.

## ON MOTION FOR RELIEF FROM JUDGMENT

The principal question presented by the Dansker defendants' present motion for relief from judgment [F.R.C.P. 60 (b)] is whether it was proper to grant summary judgment as to liability against them on the claim that the proxy statement pursuant to which certain warrants and options were approved by the shareholders violated SEC Rule 14a–3. Judge Lasker originally granted such summary judgment on March 30, 1973 and adhered to his views on re-argument by opinion dated August 23, 1973. I adopted Judge Lasker's rulings in my first opinion dated November 4, 1974, and adhered to it in denying re-argument on November 22, 1974. Apparently the point defendants now urge was never raised before Judge Lasker,[1] and only received parenthetic mention in the 53-page brief in support of the motion before me. It began to emerge on the 1974 motion for re-argument, and has now been fully developed as a ground for upsetting Judge Lasker's original ruling. Despite this rather amazing history, we shall give the argument careful consideration.

The Danskers' present position is simply this: they claim that Rule 14a–3 imposes obligations—insofar as here relevant—only upon the issuing corporation; that their individual liability, if any, must be founded upon § 20(a) of the 1934 Act (controlling persons) and that such section gives them a good faith defense which defense, by hypothesis, raises a question of fact.

---

1. The Dansker defendants tried to submit some sort of reply brief to Judge Lasker after the motions were *sub judice*, but he rejected same. No indication has been given as to what was in that brief.

The difficulty with this argument lies in its underlying premise. ·While we speak of the Danskers having violated Rule 14a–3, they are of course actually charged with violating Section 14(a) of the Act, which *section commands obedience* to the rules promulgated thereunder. Section 14(a), so far as here relevant, provides (15 U.S.C. § 78n):

> "It shall be unlawful for any person . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to *permit the use of his name to solicit* any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title." (emphasis added)

■ With respect to Norman Dansker there can be no question that he permitted "the use" of his name on the inadequate proxy statement. Consequently, there is no occasion to consider his liability as a "controlling person".

This point is well illustrated by consideration of the cases upon which the Danskers rely: Lanza v. Drexel & Co. (2d Cir. 1973) 479 F.2d 1277, S. E. C. v. Coffey (6th Cir. 1974) 493 F.2d 1304 and Gordon v. Burr (2d Cir. 1974) 506 F.2d 1080.

In *Lanza,* the question was whether one Coleman, who had been an important director of BarChris Construction Corp., should be held liable for fraud committed by some of his co-directors in inducing plaintiffs to merge their company into BarChris. No prospectus or proxy statement was involved. The court held that knowledge of the fraud must be attributed to Coleman before liability could be assessed.

In *Coffey,* it was alleged that a corporation had obtained a loan from the state of Ohio as a result of certain misstatements claimed to have been made to a rating agency, with the result that the agency gave the corporation an "A" rating for its securities. No prospectus or proxy statement was involved. The court held that the director Coffey could . not be charged with any fraud of which he was wholly ignorant.

*Gordon* involved the purchase of securities as a result of alleged oral fraud by the seller. One Lord was a stockbroker who—acting for himself and not for his firm—was found to have participated in the fraud. The issue was whether the firm by which Lord had been employed could be held liable as a person "controlling" him. The court held that, in the absence of some evidence of knowledge or of "meaningful" participation, it could not (500 F.2d at 1086).

The mere recitation of the facts in those cases show their inapplicability to the situation at bar. None of them dealt with a statute which imposed liability upon one who allowed the "use" of his name on a statement which violated a Commission rule.

■ With respect to the other two Danskers, the situation is different, as their names were not used in the proxy statement within the meaning of the statute.[2] The question, therefore, is whether they themselves used the proxy statement "to solicit". It is claimed by plaintiff—and in no way denied by any defendant—that the Danskers were the intended beneficiaries of the resolutions mentioned in the proxy statement, that they were aware of and had an opportunity to read it, and were involved in the Board's approval of the resolutions which resulted in its distribution. In such circumstances, it cannot be reasonably contended that they did not "solicit" proxies with that statement.

2. The appearance of their names as beneficiaries of the various proposals could not be considered use of their names "to solicit".

This disposes of the Danskers' main argument in support of their instant motion. However, our own research in connection with their subsidiary argument that no damage resulted from the proxy statement's unlawful omission has brought to our attention Judge Mansfield's decision in Kaminsky v. Adams (S.D.N.Y.1963) 281 F.Supp. 501. That decision poses a more difficult problem. Judge Mansfield (then a judge of this court) squarely held that a violation of § 14(a) could not give rise to civil liability unless it were alleged and proved that "but for" the violation in question there would not have occurred the corporate action claimed to have caused the damage. Thus, Judge Mansfield observed (at 506):

> "J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), held that a private right of action exists to remedy violations of § 14(a) of the Exchange Act, 15 U.S.C.A. § 78n(a), which proscribes proxy solicitation in contravention of Commission rules and regulations. However, *Borak* and its progeny, e. g., Cohen v. Colvin, 266 F.Supp. 677, 685 (S.D.N.Y. 1967); Hoover v. Allen, 241 F.Supp. 213, 230 (S.D.N.Y.1965); Barnett v. Anaconda Co., 238 F.Supp. 766, 771 (S.D.N.Y.1965), have all required that plaintiff demonstrate 'but for' causation, i. e., that the corporate action would not have occurred in the absence of the alleged violation of the proxy rules."

This same rule has been adopted in the District of Delaware. Dillon v. Berg (D.Del.1971) 326 F.Supp. 1214, 1234 n. 31; Ash v. Brunswick Corp. (D.Del. 1975); CCH Sec.L.Rep. ¶ 95,109. So far as we can find, there has been no contrary decision.

■ Had the Danskers made a timely motion on this ground, I would have dismissed plaintiff's R. 14a–3 claim with leave to replead. At this late date, however, I shall deem the complaint to have been amended to include the necessary allegations of causation, but shall modify Judge Lasker's decision by putting the plaintiff to his proof on the issue of causation.

None of the other arguments now urged by the Danskers require much comment. As Judge Lasker and I both necessarily recognized, any grant of options or warrants by hypothesis dilutes the value of any later stock that may be issued. Whether this dilution has any effect in the real world must await determination at trial.

■ The alleged conflict between § 504(b) and § 628(a) of the New York Business Corporation Law is non-existent. The limit of an unpaid subscriber's liability is the "consideration for which such shares could be issued lawfully." BCL § 628(a). There is no reason why the shares in question could not have "lawfully" been issued for cash in the amount of the notes given.

■ To recapitulate then, Judge Lasker's and my orders are modified in the respects set forth below and are in all other respects re-affirmed:

1. Norman Dansker, having signed the proxy statement in question, is individually and directly liable for the R. 14a–3 violation.

2. Jerome and Raphael Dansker, having been aware of the proxy statement, having had an opportunity to read it as members of the Board of Directors, having been instrumental in its approval by the Board and having been the chief beneficiaries of the resolutions contained therein, are also individually and directly liable for the R. 14a–3 violation, despite the fact that their names do not appear thereon.

3. The complaint is modified to include an allegation that but for the failure to state the current market price of IFC stock, the shareholders would not have approved of

the three corporate acts benefitting the Dansker defendants.

4. Plaintiff has the burden of proving such causation at the trial of this matter.

Certification, pursuant to 28 U.S.C. § 1292(b) is denied.

So ordered.